# COUNTY COURT OF ULSTER COUNTY, NEW YORK, ET AL. *v.* ALLEN ET AL.

No. 77–1554.   Argued February 22, 1979—Decided June 4, 1979

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, and REHNQUIST, JJ., joined. BURGER, C. J., filed a concurring opinion, *post*, p. 167. POWELL, J., filed a dissenting opinion, in which BRENNAN, STEWART, and MARSHALL, JJ., joined, *post*, p. 168.

*Eileen F. Shapiro,* Assistant Attorney General of New York, argued the cause for petitioners. With her on the briefs were *Robert Abrams,* Attorney General, *Louis J. Lefkowitz,* former Attorney General, *Samuel A. Hirshowitz,* First Assistant Attorney General, *Patricia C. Armstrong,* Assistant Attorney General, and *George D. Zuckerman,* Assistant Solicitor General.

*Michael Young* argued the cause and filed a brief for respondents.

MR. JUSTICE STEVENS delivered the opinion of the Court.

A New York statute provides that, with certain exceptions, the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all persons then occupying the vehicle.[1] The United States Court of Appeals for the

---

[1] New York Penal Law § 265.15 (3) (McKinney 1967):

"The presence in an automobile, other than a stolen one or a public omnibus, of any firearm, defaced firearm, firearm silencer, bomb, bombshell, gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckles, sandbag, sandclub or slungshot is presumptive evidence of its possession by all persons occupying such automobile at the time such

Second Circuit held that respondents may challenge the constitutionality of this statute in a federal habeas corpus proceeding and that the statute is "unconstitutional on its face." 568 F. 2d 998, 1009. We granted certiorari to review these holdings and also to consider whether the statute is constitutional in its application to respondents. 439 U. S. 815.

Four persons, three adult males (respondents) and a 16-year-old girl (Jane Doe, who is not a respondent here), were jointly tried on charges that they possessed two loaded handguns, a loaded machinegun, and over a pound of heroin found in a Chevrolet in which they were riding when it was stopped for speeding on the New York Thruway shortly after noon on March 28, 1973. The two large-caliber handguns, which together with their ammunition weighed approximately six pounds, were seen through the window of the car by the investigating police officer. They were positioned crosswise in an open handbag on either the front floor or the front seat of the car on the passenger side where Jane Doe was sitting. Jane Doe admitted that the handbag was hers.[2] The machine-

---

weapon, instrument or appliance is found, except under the following circumstances:

"(a) if such weapon, instrument or appliance is found upon the person of one of the occupants therein; (b) if such weapon, instrument or appliance is found in an automobile which is being operated for hire by a duly licensed driver in the due, lawful and proper pursuit of his trade, then such presumption shall not apply to the driver; or (c) if the weapon so found is a pistol or revolver and one of the occupants, not present under duress, has in his possession a valid license to have and carry concealed the same."

In addition to the three exceptions delineated in §§ 265.15 (3) (a)–(c) above as well as the stolen-vehicle and public-omnibus exception in § 265.15 (3) itself, § 265.20 contains various exceptions that apply when weapons are present in an automobile pursuant to certain military, law enforcement, recreational, and commercial endeavors.

[2] The arrest was made by two state troopers. One officer approached the driver, advised him that he was going to issue a ticket for speeding, requested identification, and returned to the patrol car. After a radio

gun and the heroin were discovered in the trunk after the police pried it open. The car had been borrowed from the driver's brother earlier that day; the key to the trunk could not be found in the car or on the person of any of its occupants, although there was testimony that two of the occupants had placed something in the trunk before embarking in the borrowed car.[3] The jury convicted all four of possession of the handguns and acquitted them of possession of the contents of the trunk.

Counsel for all four defendants objected to the introduction into evidence of the two handguns, the machinegun, and the drugs, arguing that the State had not adequately demonstrated a connection between their clients and the contraband. The trial court overruled the objection, relying on the pre-

---

check indicated that the driver was wanted in Michigan on a weapons charge, the second officer returned to the vehicle and placed the driver under arrest. Thereafter, he went around to the right side of the car and, in "open view," saw a portion of a .45-caliber automatic pistol protruding from the open purse on the floor or the seat. *People* v. *Lemmons,* 40 N. Y. 2d 505, 508–509, 354 N. E. 2d 836, 838–839 (1976). He opened the car door, removed that gun, and saw a .38-caliber revolver in the same handbag. He testified that the crosswise position of one or both of the guns kept the handbag from closing. After the weapons were secured, the two remaining male passengers, who had been sitting in the rear seat, and Jane Doe were arrested and frisked. A subsequent search at the police station disclosed a pocketknife and marihuana concealed on Jane Doe's person. Tr. 187–192, 208–214, 277–278, 291–297, 408.

[3] Early that morning, the four defendants had arrived at the Rochester, N. Y., home of the driver's sister in a Cadillac. Using her telephone, the driver called their brother, advised him that "his car ran hot" on the way there from Detroit and asked to borrow the Chevrolet so that the four could continue on to New York City. The brother brought the Chevrolet to the sister's home. He testified that he had recently cleaned out the trunk and had seen no weapons or drugs. The sister also testified, stating that she saw two of the defendants transfer some unidentified item or items from the trunk of one vehicle to the trunk of the other while both cars were parked in her driveway. *Id.,* at 17–19, 69–73, 115–116, 130–131, 193–194.

sumption of possession created by the New York statute.
Tr. 474–483. Because that presumption does not apply if
a weapon is found "upon the person" of one of the occupants
of the car, see n. 1, *supra*, the three male defendants also
moved to dismiss the charges relating to the handguns on the
ground that the guns were found on the person of Jane Doe.
Respondents made this motion both at the close of the prose-
cution's case and at the close of all evidence. The trial judge
twice denied it, concluding that the applicability of the "upon
the person" exception was a question of fact for the jury. Tr.
544–557, 589–590.

At the close of the trial, the judge instructed the jurors that
they were entitled to infer possession from the defendants'
presence in the car. He did not make any reference to the
"upon the person" exception in his explanation of the statu-
tory presumption, nor did any of the defendants object to this
omission or request alternative or additional instructions on
the subject.

Defendants filed a post-trial motion in which they chal-
lenged the constitutionality of the New York statute as applied
in this case. The challenge was made in support of their
argument that the evidence, apart from the presumption, was
insufficient to sustain the convictions. The motion was de-
nied, *id.*, at 775–776, and the convictions were affirmed by
the Appellate Division without opinion. *People* v. *Lemmons*,
49 App. Div. 2d 639, 370 N. Y. S. 2d 243 (1975).

The New York Court of Appeals also affirmed. *People* v.
*Lemmons*, 40 N. Y. 2d 505, 354 N. E. 2d 836 (1976). It re-
jected the argument that as a matter of law the guns were on
Jane Doe's person because they were in her pocketbook. Al-
though the court recognized that in some circumstances the
evidence could only lead to the conclusion that the weapons
were in one person's sole possession, it held that this record
presented a jury question on that issue. Since the defendants
had not asked the trial judge to submit the question to the

jury, the Court of Appeals treated the case as though the jury had resolved this fact question in the prosecution's favor. It therefore concluded that the presumption did apply and that there was sufficient evidence to support the convictions. *Id.,* at 509–512, 354 N. E. 2d, at 839–841. It also summarily rejected the argument that the presumption was unconstitutional as applied in this case. See *infra,* at 153–154.

Respondents filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York contending that they were denied due process of law by the application of the statutory presumption of possession. The District Court issued the writ, holding that respondents had not "deliberately bypassed" their federal claim by their actions at trial and that the mere presence of two guns in a woman's handbag in a car could not reasonably give rise to the inference that they were in the possession of three other persons in the car. App. to Pet. for Cert. 33a–36a.

The Court of Appeals for the Second Circuit affirmed, but for different reasons. First, the entire panel concluded that the New York Court of Appeals had decided respondents' constitutional claim on its merits rather than on any independent state procedural ground that might have barred collateral relief. Then, the majority of the court, without deciding whether the presumption was constitutional as applied in this case, concluded that the statute is unconstitutional on its face because the "presumption obviously sweeps within its compass (1) many occupants who may not know they are riding with a gun (which may be out of their sight), and (2) many who may be aware of the presence of the gun but not permitted access to it." [4] Concurring separately, Judge

---

[4] The majority continued:

"Nothing about a gun, which may be only a few inches in length (e. g., a Baretta or Derringer) and concealed under a seat, in a glove compartment or beyond the reach of all but one of the car's occupants, assures that its presence is known to occupants who may be hitchhikers or other

Timbers agreed with the District Court that the statute was unconstitutional as applied but considered it improper to reach the issue of the statute's facial constitutionality. 568 F. 2d, at 1011–1012.

The petition for a writ of certiorari presented three questions: (1) whether the District Court had jurisdiction to entertain respondents' claim that the presumption is unconstitutional; (2) whether it was proper for the Court of Appeals to decide the facial constitutionality issue; and (3) whether the application of the presumption in this case is unconstitutional. We answer the first question in the affirmative, the second two in the negative. We accordingly reverse.

# I

This is the sixth time that respondents have asked a court to hold that it is unconstitutional for the State to rely on the presumption because the evidence is otherwise insufficient to convict them.[5] No court has refused to hear the claim or

_____

casual passengers, much less that they have any dominion or control over it." 568 F. 2d, at 1007.

[5] Respondents first made the argument in a memorandum of law in support of their unsuccessful post-trial motion to set aside the verdict. App. 36a–38a. That memorandum framed the argument in three parts precisely as respondents would later frame it in their briefs in the Appellate Division and Court of Appeals, see id., at 41a–44a, 50a–52a, and in their petition for a writ of habeas corpus. See id., at 6a–10a: First, "[t]he only evidence" relied upon to convict them was their presence in an automobile in which the two handguns were found. Id., at 35a. Second, but for the presumption of possession, this evidence was "totally insufficient to sustain the conviction." Id., at 38a. And third, that presumption is "unconstitutional as applied" (or, " 'arbitrary,' and hence unconstitutional") under Leary v. United States, 395 U. S. 6, 36, a case in which this Court established standards for determining the validity under the Due Process Clauses of statutory presumptions in criminal cases. App. 36a. This sufficiency-focused argument on the presumption is amply supported in our case law. E. g., Turner v. United States, 396 U. S. 398, 424 ("[A] conviction resting on [an unconstitutional] presump-

suggested that it was improperly presented. Nevertheless, because respondents made it for the first time only after the jury had announced its verdict, and because the state courts were less than explicit in their reasons for rejecting it, the question arises whether the New York courts did so on the basis of an independent and adequate state procedural ground that bars the federal courts from addressing the issue on habeas corpus.[6]  See *Wainwright* v. *Sykes,* 433 U. S. 72; *Fay*

tion cannot be deemed a conviction based on sufficient evidence"). See also *Rossi* v. *United States,* 289 U. S. 89, 90.

Although respondents' memorandum did not cite the provision of the Constitution on which they relied, their citation of our leading case applying that provision, in conjunction with their use of the word "unconstitutional," left no doubt that they were making a federal constitutional argument. Indeed, by its responses to that argument at every step of the way, the State made clear that it, at least, understood the federal basis for the claim. *E. g.,* Respondent's Brief and Appendix in the Court of Appeals of the State of New York, p. 9.

[6] Petitioners contend that, in addition to the timing of respondents' claim and the alleged silence of the New York courts, there is another basis for concluding that those courts rejected respondents' claim on procedural grounds. Petitioners point out that respondents—having unsuccessfully argued to the trial court (as they would unsuccessfully argue on appeal) that the "upon the person" exception applied as a matter of law in their case—failed either to ask the trial court to instruct the jury to consider the exceptions or to object when the court omitted the instruction. They further point out that the majority of the New York Court of Appeals, after concluding that the exception's application was a jury question in this case, refused to review the trial court's omission of an instruction on the issue because of respondents' failure to protest that omission. 40 N. Y. 2d, at 512, 354 N. E. 2d, at 841.

Petitioners argue that we should infer from the Court of Appeals' explicit treatment of this state-law claim—a claim never even pressed on appeal—how that court implicitly treated the federal claim that has been the crux of respondents' litigation strategy from its post-trial motion to the present. There is no basis for the inference. Arguing on appeal that an instruction that was never requested should have been given is far more disruptive to orderly judicial proceedings than arguing in a post-trial motion that the evidence was insufficient to support the verdict. Moreover, that the Court of Appeals felt compelled expressly to reject, on

v. *Noia*, 372 U. S. 391, 438. We conclude that there is no support in either the law of New York or the history of this litigation for an inference that the New York courts decided respondents' constitutional claim on a procedural ground, and that the question of the presumption's constitutionality is therefore properly before us. See *Franks* v. *Delaware*, 438 U. S. 154, 161–162; *Mullaney* v. *Wilbur*, 421 U. S. 684, 704–705, and n. (REHNQUIST, J., concurring).[7]

procedural grounds, an argument never made is hardly proof that they would silently reject on similar grounds an argument that *was* forcefully made. As we discuss, *infra*, at 153–154, it is clear that the court did address the constitutional question and did so on the merits, albeit summarily.

Petitioners also contend that respondents, having failed to seek a jury determination based on state law that the presumption does not apply, may not now argue that the presumption is void as a matter of federal constitutional law. The argument is unpersuasive. Respondents' failure to demand an instruction on the state-law exception is no more and no less than a concession on their part that as a matter of state law the guns were *not* found "upon the person" of any occupant of the car as that phrase is interpreted by the New York courts, and therefore, again as a matter of state law, that the presumption of possession is applicable. The New York Court of Appeals reviewed the case in that posture, and we do the same.

[7] Petitioners advance a second reason why there is no federal jurisdiction in this case. Respondents were convicted on the basis of a statutory presumption they argue is unconstitutional. Following the Court of Appeals' affirmance of their conviction, they could have appealed that decision to this Court under 28 U. S. C. § 1257 (2) and thereby forced a binding federal disposition of the matter. Because respondents failed to do so, petitioners argue that respondents waived any right to federal review of the decision on habeas corpus.

In *Fay* v. *Noia*, 372 U. S. 391, 435–438, we rejected a similar argument that habeas corpus review was unavailable in advance of a petition for certiorari. See also *Stevens* v. *Marks*, 383 U. S. 234, in which the Court entertained a challenge to a state statute in a federal habeas corpus proceeding even though the defendant had not pursued that challenge on appeal to this Court prior to filing his petition for habeas corpus. The analysis of the federal habeas statute that led us to our conclusion in *Fay* is equally applicable in the present situation. That statute gives

New York has no clear contemporaneous-objection policy that applies in this case.[8] No New York court, either in this litigation or in any other case that we have found, has ever expressly refused on contemporaneous-objection grounds to consider a post-trial claim such as the one respondents made. Cf. *Wainwright* v. *Sykes, supra,* at 74. Indeed, the rule in New York appears to be that "insufficiency of the evidence" claims may be raised at any time until sentence has been

federal courts jurisdiction to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" if that custody allegedly violates "the Constitution or laws or treaties of the United States." 28 U. S. C. § 2254 (a). The only statutory exception to this jurisdiction arises when the petitioner has failed to exhaust "the remedies available in the courts of the State." § 2254 (b). As was said in *Fay* with regard to petitions for certiorari under 28 U. S. C. § 1257 (3), direct appeals to this Court under § 1257 (2) are not " 'remedies available in the courts of the State.' " 372 U. S., at 436. Accordingly, there is no statutory requirement of an appeal to this Court as a predicate to habeas jurisdiction.

[8] New York's cautious contemporaneous-objection policy is embodied in N. Y. Crim. Proc. Law § 470.05 (2) (McKinney 1971):

"For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction *or at any subsequent time when the court had an opportunity of effectively changing the same"* (emphasis added).

That policy is carefully limited by several statutory qualifications in addition to the one italicized above. First, the form of the "protest" is not controlling so long as its substance is clear. *Ibid.* Second, such protests may be made "expressly or impliedly." *Ibid.* Third, once a protest is made, it need not be repeated at each subsequent disposition of the matter. *Ibid.* And finally, the Appellate Division of the New York Supreme Court is authorized in its discretion to "consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant," even if not previously objected to. § 470.15 (1). See, *e. g., People* v. *Fragale,* 60 App. Div. 2d 972, 401 N. Y. S. 2d 629 (1978); *People* v. *Travison,* 59 App. Div. 2d 404, 408, 400 N. Y. S. 2d 188, 191 (1977).

imposed.[9] Moreover, even if New York's contemporaneous-objection rule did generally bar the type of postverdict insufficiency claim that respondents made, there are at least two judicially created exceptions to that rule that might nonetheless apply in this case.[10]

[9] *E. g., People* v. *Ramos,* 33 App. Div. 2d 344, 308 N. Y. S. 2d 195 (1970); *People* v. *Walker,* 26 Misc. 2d 940, 206 N. Y. S. 2d 377 (1960). Cf. Fed. Rule Crim. Proc. 29 (c) ("It shall not be necessary to the making of [a motion for judgment of acquittal] that a similar motion has been made prior to the submission of the case to the jury"); *Burks* v. *United States,* 437 U. S. 1, 17–18 (under federal law a post-trial motion for a new trial based on insufficiency of the evidence is not a waiver of the right to acquittal at that point if the evidence is found to be insufficient).

[10] First, the New York Court of Appeals has developed an exception to the State's contemporaneous-objection policy that allows review of unobjected-to errors that affect "a fundamental constitutional right." *People* v. *McLucas,* 15 N. Y. 2d 167, 172, 204 N. E. 2d 846, 848 (1965). Accord, *People* v. *Arthur,* 22 N. Y. 2d 325, 239 N. E. 2d 537 (1968); *People* v. *DeRenzzio,* 19 N. Y. 2d 45, 224 N. E. 2d 97 (1966). Indeed, this Court recognized that exception in concluding that an ambiguously presented federal claim had been properly raised in New York trial and appellate courts and was therefore cognizable by this Court on appeal. *Street* v. *New York,* 394 U. S. 576, 583–584. Although this exception has been narrowed more recently, *e. g., People* v. *Robinson,* 36 N. Y. 2d 224, 326 N. E. 2d 784 (1975), it continues to have currency within the State where there has been a denial of a "fair trial." *E. g., La Rocca* v. *Lane,* 37 N. Y. 2d 575, 584, 338 N. E. 2d 606, 613 (1975); *People* v. *Bennett,* 29 N. Y. 2d 462, 467, 280 N. E. 2d 637, 639 (1972); *People* v. *White,* 86 Misc. 2d 803, 809, 383 N. Y. S. 2d 800, 804 (1976). The relevance of this exception is apparent from the Second Circuit opinion in this case which held that respondents "were denied a fair trial when the jury was charged that they could rely on the presumption . . . ." 568 F. 2d, at 1011.

Second, the New York courts will also entertain a federal constitutional claim on appeal even though it was not expressly raised at trial if a similar claim seeking similar relief *was* clearly raised. *E. g., People* v. *De Bour,* 40 N. Y. 2d 210, 214–215, 352 N. E. 2d 562, 565–566 (1976); *People* v. *Robbins,* 38 N. Y. 2d 913, 346 N. E. 2d 815 (1976); *People* v. *Arthur, supra.* Cf. *United States* v. *Mauro,* 436 U. S. 340, 364–365 (failure to invoke Interstate Agreement on Detainers time limit in a speedy trial motion is not a waiver of the former argument). In this case, respondents made two arguments based on the unavailability of the presumption and the conse-

The conclusion that the New York courts did not rely on a state procedural ground in rejecting respondents' constitutional claim is supported, not only by the probable unavailability in New York law of any such ground, but also by three aspects of this record. First, the prosecution never argued to any state court that a procedural default had occurred. This omission surely suggests that the New York courts were not thinking in procedural terms when they decided the issue. Indeed, the parties did not even apprise the appellate courts of the timing of respondents' objection to the presumption; a procedural default would not have been discovered, therefore, unless those courts combed the transcript themselves. If they did so without any prompting from the parties and based their decision on what they found, they surely would have said so.

Second, the trial court ruled on the merits when it denied respondents' motion to set aside the verdict. Tr. 775–776. Because it was not authorized to do so unless the issue was preserved for appeal, the trial court implicitly decided that

quent total absence, in their view, of proof of the crime. The first, that the statutory "upon the person" exception to the presumption should apply in this case, was made in the middle of trial at the close of the prosecutor's case and then repeated at the close of the defendants' case. Tr. 554–590; App. 12a–17a. Indeed, respondents arguably made this claim even earlier, during the middle of the government's case, when they unsuccessfully objected to the introduction of the handguns in evidence on the ground that there was "nothing [in the record up to that point] to connect this weapon with the . . . defendants." Tr. 474–502. Although the constitutional counterpart to this argument was not made until just after the verdict was announced, the earlier objection to the State's reliance on the presumption might suffice under these cases as an adequate contemporaneous objection. See N. Y. Crim. Proc. Law § 470.05 (2) (McKinney 1971); n. 8, *supra*. The logical linkage between the two objections is suggested by legislative history and case law in New York indicating that the "upon the person" exception was included in the presumption statute to avoid constitutional problems. See *People* v. *Logan*, 94 N. Y. S. 2d 681, 684 (Sup. Ct., 1949); Report of the New York State Joint Legislative Committee on Firearms and Ammunition, N. Y. Leg. Doc. No. 29, p. 21 (1962).

there was no procedural default.[11]  The most logical inference to be drawn from the Appellate Division's unexplained affirmance is that that court accepted not only the judgment but also the reasoning of the trial court.

Third, it is apparent on careful examination that the New York Court of Appeals did not ignore respondents' constitutional claim in its opinion.  Instead, it summarily rejected the claim on its merits.  That court had been faced with the issue in several prior cases and had always held the presumption constitutional.  Indeed, the State confined its brief on the subject in the Court of Appeals to a string citation of some of those cases.  Respondent's Brief in the Court of Appeals, p. 9.  It is not surprising, therefore, that the Court of Appeals confined *its* discussion of the issue to a reprise of the explanation that its prior cases have traditionally given for the statute in holding it constitutional and a citation of two of those cases.  40 N. Y. 2d, at 509–511, 354 N. E. 2d, at 839–840, citing *People* v. *McCaleb,* 25 N. Y. 2d 394, 255 N. E. 2d 136 (1969); *People* v. *Leyva,* 38 N. Y. 2d 160, 341 N. E. 2d 546 (1975).  Although it omits the word "constitutional," the most logical interpretation of this discussion is that it was intended as a passing and summary disposition of an issue that had already been decided on numerous occasions.  This interpretation is borne out by the fact that the dissenting members of the Court of Appeals unequivocally addressed the merits of the constitutional claim [12] and by the fact that three Second Circuit Judges, whose experience with New York

---

[11] Section 330.30 (1) of the N. Y. Crim. Proc. Law (McKinney 1971) authorizes a trial court to grant a motion to set aside the verdict "[a]t any time after rendition of a verdict of guilty and before sentence" on "[a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court."

[12] 40 N. Y. 2d, at 514–515, 354 N. E. 2d, at 842–843 (Wachtler, J., concurring and dissenting); *id.,* at 516, 354 N. E. 2d, at 843–844 (Fuchsberg, J., concurring and dissenting).

practice is entitled to respect, concluded that the State's highest court had decided the issue on its merits. 568 F. 2d, at 1000. See *Bishop* v. *Wood,* 426 U. S. 341, 345–346; *Huddleston* v. *Dwyer,* 322 U. S. 232, 237.

Our conclusion that it was proper for the federal courts to address respondents' claim is confirmed by the policies informing the "adequate state ground" exception to habeas corpus jurisdiction. The purpose of that exception is to accord appropriate respect to the sovereignty of the States in our federal system. *Wainwright* v. *Sykes,* 433 U. S., at 88. But if neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim.[13]

## II

Although 28 U. S. C. § 2254 authorizes the federal courts to entertain respondents' claim that they are being held in custody in violation of the Constitution, it is not a grant of power to decide constitutional questions not necessarily subsumed within that claim. Federal courts are courts of limited jurisdiction. They have the authority to adjudicate specific controversies between adverse litigants over which and over whom they have jurisdiction. In the exercise of that authority, they have a duty to decide constitutional questions when necessary to dispose of the litigation before them. But they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration. *E. g., New York Transit Authority* v. *Beazer,* 440 U. S. 568, 582–583.

A party has standing to challenge the constitutionality of

---

[13] Moreover, looking beyond its position as an adversary in this litigation, it is arguable that the State of New York will benefit from an authoritative resolution of the conflict between its own courts and the federal courts sitting in New York concerning the constitutionality of one of its statutes.

a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. *Broadrick* v. *Oklahoma,* 413 U. S. 601, 610 (and cases cited). A limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment. *Id.,* at 611–616. This exception has been justified by the overriding interest in removing illegal deterrents to the exercise of the right of free speech. *E. g., Gooding* v. *Wilson,* 405 U. S. 518, 520; *Dombrowski* v. *Pfister,* 380 U. S. 479, 486. That justification, of course, has no application to a statute that enhances the legal risks associated with riding in vehicles containing dangerous weapons.

In this case, the Court of Appeals undertook the task of deciding the constitutionality of the New York statute "on its face." Its conclusion that the statutory presumption was arbitrary rested entirely on its view of the fairness of applying the presumption in hypothetical situations—situations, indeed, in which it is improbable that a jury would return a conviction,[14] or that a prosecution would ever be insti-

---

[14] Indeed, in this very case the permissive presumptions in § 265.15 (3) and its companion drug statute, N. Y. Penal Law § 220.25 (1) (McKinney Supp. 1978), were insufficient to persuade the jury to convict the defendants of possession of the loaded machinegun and heroin in the trunk of the car notwithstanding the supporting testimony that at least two of them had been seen transferring something into the trunk that morning. See n. 3, *supra.*

The hypothetical, even implausible, nature of the situations relied upon by the Court of Appeals is illustrated by the fact that there are no reported cases in which the presumption led to convictions in circumstances even remotely similar to the posited situations. In those occasional cases in which a jury has reached a guilty verdict on the basis of evidence insufficient to justify an inference of possession from presence, the New York appellate courts have not hesitated to reverse. *E. g., People* v.

tuted.[15]   We must accordingly inquire whether these respondents had standing to advance the arguments that the Court of Appeals considered decisive.   An analysis of our prior cases indicates that the answer to this inquiry depends on the type of presumption that is involved in the case.

Inferences and presumptions are a staple of our adversary system of factfinding.   It is often necessary for the trier of fact to determine the existence of an element of the crime— that is, an "ultimate" or "elemental" fact—from the existence of one or more "evidentiary" or "basic" facts.   *E. g., Barnes* v. *United States,* 412 U. S. 837, 843–844; *Tot* v. *United States,* 319 U. S. 463, 467; *Mobile, J. & K. C. R. Co.* v. *Turnipseed,* 219 U. S. 35, 42.   The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate·facts beyond a reasonable doubt.   See *In re Winship,* 397 U. S. 358, 364; *Mullaney* v. *Wilbur,* 421 U. S., at 702– 703, n. 31.

*Scott,* 53 App. Div. 2d 703, 384 N. Y. S. 2d 878 (1976); *People* v. *Garcia,* 41 App. Div. 2d 560, 340 N. Y. S. 2d 35 (1973).

In light of the improbable character of the situations hypothesized by the Court of Appeals, its facial analysis would still be unconvincing even were that type of analysis appropriate.   This Court has never required that a presumption be accurate in every imaginable case.   See *Leary* v. *United States,* 395 U. S., at 53.

[15] See n. 4, *supra,* and accompanying text.   Thus, the assumption that it would be unconstitutional to apply the statutory presumption to a hitch-hiker in a car containing a concealed weapon does not necessarily advance the constitutional claim of the driver of a car in which a gun was found on the front seat, or of other defendants in entirely different situations.

The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. See, e. g., Barnes v. United States, supra, at 840 n. 3. In that situation the basic fact may constitute prima facie evidence of the elemental fact. See, e. g., Turner v. United States, 396 U. S. 398, 402 n. 2. When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. E. g., Barnes v. United States, supra, at 845; Turner v. United States, supra, at 419–424. See also United States v. Gainey, 380 U. S. 63, 67–68, 69–70. Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

A mandatory presumption is a far more troublesome evidentiary device. For it may affect not only the strength of the "no reasonable doubt" burden but also the placement of that burden; it tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts. E. g., Turner v. United States, supra, at 401–402, and n. 1; Leary v. United States, 395 U. S. 6, 30; United States v. Romano, 382 U. S. 136, 137, and n. 4, 138, 143; Tot v. United States, supra, at 469.[16] In this situation, the Court

---

[16] This class of more or less mandatory presumptions can be subdivided into two parts: presumptions that merely shift the burden of production to

has generally examined the presumption on its face to determine the extent to which the basic and elemental facts coincide. *E. g., Turner* v. *United States, supra,* at 408–418; *Leary* v.

---

the defendant, following the satisfaction of which the ultimate burden of persuasion returns to the prosecution; and presumptions that entirely shift the burden of proof to the defendant. The mandatory presumptions examined by our cases have almost uniformly fit into the former subclass, in that they never totally removed the ultimate burden of proof beyond a reasonable doubt from the prosecution. *E. g., Tot* v. *United States,* 319 U. S., at 469. See *Roviaro* v. *United States,* 353 U. S. 53, 63, describing the operation of the presumption involved in *Turner, Leary,* and *Romano.*

To the extent that a presumption imposes an extremely low burden of production—*e. g.,* being satisfied by "any" evidence—it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such. See generally *Mullaney* v. *Wilbur,* 421 U. S. 684, 703 n. 31.

In deciding what type of inference or presumption is involved in a case, the jury instructions will generally be controlling, although their interpretation may require recourse to the statute involved and the cases decided under it. *Turner* v. *United States* provides a useful illustration of the different types of presumptions. It analyzes the constitutionality of two different presumption statutes (one mandatory and one permissive) as they apply to the basic fact of possession of both heroin and cocaine, and the presumed facts of importation and distribution of narcotic drugs. The jury was charged essentially in the terms of the two statutes.

The importance of focusing attention on the precise presentation of the presumption to the jury and the scope of that presumption is illustrated by a comparison of *United States* v. *Gainey,* 380 U. S. 63, with *United States* v. *Romano.* Both cases involved statutory presumptions based on proof that the defendant was present at the site of an illegal still. In *Gainey* the Court sustained a conviction "for carrying on" the business of the distillery in violation of 26 U. S. C. § 5601 (a) (4), whereas in *Romano,* the Court set aside a conviction for being in "possession, or custody, or . . . control" of such a distillery in violation of § 5601 (a) (1). The difference in outcome was attributable to two important differences between the cases. Because the statute involved in *Gainey* was a sweeping prohibition of almost any activity associated with the still, whereas the *Romano* statute involved only one narrow aspect of the total

*United States, supra,* at 45–52; *United States* v. *Romano, supra,* at 140–141; *Tot* v. *United States,* 319 U. S., at 468.   To the extent that the trier of fact is forced to abide by the presumption, and may not reject it based on an independent evaluation of the particular facts presented by the State, the analysis of the presumption's constitutional validity is logically divorced from those facts and based on the presumption's accuracy in the run of cases.[17]   It is for this reason that the

undertaking, there was a much higher probability that mere presence could support an inference of guilt in the former case than in the latter.

Of perhaps greater importance, however, was the difference between the trial judge's instructions to the jury in the two cases.   In *Gainey,* the judge had explained that the presumption was permissive; it did not require the jury to convict the defendant even if it was convinced that he was present at the site.   On the contrary, the instructions made it clear that presence was only " 'a circumstance to be considered along with all the other circumstances in the case.' "   As we emphasized, the "jury was thus specifically told that the statutory inference was not conclusive."   380 U. S., at 69–70.   In *Romano,* the trial judge told the jury that the defendant's presence at the still " 'shall be deemed sufficient evidence to authorize conviction.' "   382 U. S., at 138.   Although there was other evidence of guilt, that instruction authorized conviction even if the jury disbelieved all of the testimony except the proof of presence at the site.   This Court's holding that the statutory presumption could not support the *Romano* conviction was thus dependent, in part, on the specific instructions given by the trial judge.   Under those instructions it was necessary to decide whether, regardless of the specific circumstances of the particular case, the statutory presumption adequately supported the guilty verdict.

[17] In addition to the discussion of *Romano* in n. 16, *supra,* this point is illustrated by *Leary* v. *United States.*   In that case, Dr. Timothy Leary, a professor at Harvard University, was stopped by customs inspectors in Laredo, Tex., as he was returning from the Mexican side of the international border.   Marihuana seeds and a silver snuffbox filled with semirefined marihuana and three partially smoked marihuana cigarettes were discovered in his car.   He was convicted of having knowingly transported marihuana which he knew had been illegally imported into this country in violation of 21 U. S. C. § 176a (1964 ed.).   That statute included a mandatory presumption: "possession shall be deemed sufficient evidence to authorize conviction [for importation] unless the defend-

Court has held it irrelevant in analyzing a mandatory presumption, but not in analyzing a purely permissive one, that there is ample evidence in the record other than the presumption to support a conviction. *E. g., Turner* v. *United States,* 396 U. S., at 407; *Leary* v. *United States,* 395 U. S., at 31–32; *United States* v. *Romano,* 382 U. S., at 138–139.

Without determining whether the presumption in this case was mandatory,[18] the Court of Appeals analyzed it on its face as if it were. In fact, it was not, as the New York Court of Appeals had earlier pointed out. 40 N. Y. 2d, at 510–511, 354 N. E. 2d, at 840.

The trial judge's instructions make it clear that the presumption was merely a part of the prosecution's case,[19] that

---

ant explains his possession to the satisfaction of the jury." Leary admitted possession of the marihuana and claimed that he had carried it from New York to Mexico and then back.

Mr. Justice Harlan for the Court noted that under one theory of the case, the jury could have found direct proof of all of the necessary elements of the offense without recourse to the presumption. But he deemed that insufficient reason to affirm the conviction because under another theory the jury might have found knowledge of importation on the basis of either direct evidence or the presumption, and there was accordingly no certainty that the jury had not relied on the presumption. 395 U. S., at 31–32. The Court therefore found it necessary to test the presumption against the Due Process Clause. Its analysis was facial. Despite the fact that the defendant was well educated and had recently traveled to a country that is a major exporter of marihuana to this country, the Court found the presumption of knowledge of importation from possession irrational. It did so, not because Dr. Leary was unlikely to know the source of the marihuana, but instead because "a majority of possessors" were unlikely to have such knowledge. *Id.,* at 53. Because the jury had been instructed to rely on the presumption even if it did not believe the Government's direct evidence of knowledge of importation (unless, of course, the defendant met his burden of "satisfying" the jury to the contrary), the Court reversed the conviction.

[18] Indeed, the court never even discussed the jury instructions.

[19] "It is your duty to consider all the testimony in this case, to weigh it carefully and to test the credit to be given to a witness by his apparent intention to speak the truth and by the accuracy of his memory to recon-

it gave rise to a permissive inference available only in certain circumstances, rather than a mandatory conclusion of possession, and that it could be ignored by the jury even if there was no affirmative proof offered by defendants in rebuttal.[20] The judge explained that possession could be actual or constructive, but that constructive possession could not exist without the intent and ability to exercise control or dominion over the weapons.[21] He also carefully instructed the jury that

---

cile, if possible, conflicting statements as to material facts and in such ways to try and get at the truth and to reach a verdict upon the evidence." Tr. 739–740.

"To establish the unlawful possession of the weapons, again the People relied upon the presumption and, in addition thereto, the testimony of Anderson and Lemmons who testified in their case in chief." *Id.*, at 744.

"Accordingly, you would be warranted in returning a verdict of guilt against the defendants or defendant if you find the defendants or defendant was in possession of a machine gun and the other weapons and that the fact of possession was proven to you by the People beyond a reasonable doubt, and an element of such proof is the reasonable presumption of illegal possession of a machine gun or the presumption of illegal possession of firearms, as I have just before explained to you." *Id.*, at 746.

[20] "Our Penal Law also provides that the presence in an automobile of any machine gun or of any handgun or firearm which is loaded is presumptive evidence of their unlawful possession.

"In other words, these presumptions or this latter presumption upon proof of the presence of the machine gun and the hand weapons, you may infer and draw a conclusion that such prohibited weapon was possessed by each of the defendants who occupied the automobile at the time when such instruments were found. The presumption or presumptions is effective only so long as there is no substantial evidence contradicting the conclusion flowing from the presumption, and the presumption is said to disappear when such contradictory evidence is adduced." *Id.*, at 743.

"The presumption or presumptions which I discussed with the jury relative to the drugs or weapons in this case need not be rebutted by affirmative proof or affirmative evidence but may be rebutted by any evidence or lack of evidence in the case." *Id.*, at 760.

[21] "As so defined, possession means actual physical possession, just as having the drugs or weapons in one's hand, in one's home or other place under one's exclusive control, or constructive possession which may exist

there is a mandatory presumption of innocence in favor of the defendants that controls unless it, as the exclusive trier of fact, is satisfied beyond a reasonable doubt that the defendants possessed the handguns in the manner described by the judge.[22] In short, the instructions plainly directed the jury to consider all the circumstances tending to support or contradict the inference that all four occupants of the car had possession of the two loaded handguns and to decide the matter for itself without regard to how much evidence the defendants introduced.[23]

Our cases considering the validity of permissive statutory presumptions such as the one involved here have rested on

---

without personal dominion over the drugs or weapons but with the intent and ability to retain such control or dominion." *Id.*, at 742.

[22] "[Y]ou are the exclusive judges of all the questions of fact in this case. That means that you are the sole judges as to the weight to be given to the evidence and to the weight and probative value to be given to the testimony of each particular witness and to the credibility of any witness." *Id.*, at 730.

"Under our law, every defendant in a criminal trial starts the trial with the presumption in his favor that he is innocent, and this presumption follows him throughout the entire trial and remains with him until such time as you, by your verdict, find him or her guilty beyond a reasonable doubt or innocent of the charge. If you find him or her not guilty, then, of course, this presumption ripens into an established fact. On the other hand, if you find him or her guilty, then this presumption has been overcome and is destroyed." *Id.*, at 734.

"Now, in order to find any of the defendants guilty of the unlawful possession of the weapons, the machine gun, the .45 and the .38, you must be satisfied beyond a reasonable doubt that the defendants possessed the machine gun and the .45 and the .38, possessed it as I defined it to you before." *Id.*, at 745.

[23] The verdict announced by the jury clearly indicates that it understood its duty to evaluate the presumption independently and to reject it if it was not supported in the record. Despite receiving almost identical instructions on the applicability of the presumption of possession to the contraband found in the front seat and in the trunk, the jury convicted all four defendants of possession of the former but acquitted all of them of possession of the latter. See n. 14, *supra.*

an evaluation of the presumption as applied to the record before the Court. None suggests that a court should pass on the constitutionality of this kind of statute "on its face." It was error for the Court of Appeals to make such a determination in this case.

## III

As applied to the facts of this case, the presumption of possession is entirely rational. Notwithstanding the Court of Appeals' analysis, respondents were not "hitchhikers or other casual passengers," and the guns were neither "a few inches in length" nor "out of [respondents'] sight." See n. 4, *supra*, and accompanying text. The argument against possession by any of the respondents was predicated solely on the fact that the guns were in Jane Doe's pocketbook. But several circumstances—which, not surprisingly, her counsel repeatedly emphasized in his questions and his argument, *e. g.*, Tr. 282–283, 294–297, 306—made it highly improbable that she was the sole custodian of those weapons.

Even if it was reasonable to conclude that she had placed the guns in her purse before the car was stopped by police, the facts strongly suggest that Jane Doe was not the only person able to exercise dominion over them. The two guns were too large to be concealed in her handbag.[24] The bag was consequently open, and part of one of the guns was in plain view, within easy access of the driver of the car and even, perhaps, of the other two respondents who were riding in the rear seat.[25]

Moreover, it is highly improbable that the loaded guns belonged to Jane Doe or that she was solely responsible for their being in her purse. As a 16-year-old girl in the company of three adult men she was the least likely of the four

---

[24] Jane Doe's counsel referred to the .45-caliber automatic pistol as a "cannon." Tr. 306.

[25] The evidence would have allowed the jury to conclude either that the handbag was on the front floor or front seat.

to be carrying one, let alone two, heavy handguns. It is far more probable that she relied on the pocketknife found in her brassiere for any necessary self-protection. Under these circumstances, it was not unreasonable for her counsel to argue and for the jury to infer that when the car was halted for speeding, the other passengers in the car anticipated the risk of a search and attempted to conceal their weapons in a pocketbook in the front seat. The inference is surely more likely than the notion that these weapons were the sole property of the 16-year-old girl.

Under these circumstances, the jury would have been entirely reasonable in rejecting the suggestion—which, incidentally, defense counsel did not even advance in their closing arguments to the jury [26]—that the handguns were in the sole possession of Jane Doe. Assuming that the jury did reject it, the case is tantamount to one in which the guns were lying on the floor or the seat of the car in the plain view of the three other occupants of the automobile. In such a case, it is surely rational to infer that each of the respondents was fully aware of the presence of the guns and had both the ability and the intent to exercise dominion and control over

---

[26] Indeed, counsel for two of the respondents virtually invited the jury to find to the contrary:

"One more thing. You know, different people live in different cultures and different societies. You may think that the way [respondent] Hardrick has his hair done up is unusual; it may seem strange to you. People live differently. . . . For example, if you were living under their times and conditions and you traveled from a big city, Detroit, to a bigger city, New York City, *it is not unusual for people to carry guns, small arms to protect themselves, is it?* There are places in New York City policemen fear to go. But you have got to understand; you are sitting here as jurors. These are people, live flesh and blood, the same as you, different motives, different objectives." *Id.*, at 653–654 (emphasis added). See also *id.*, at 634.

It is also important in this regard that respondents passed up the opportunity to have the jury instructed not to apply the presumption if it determined that the handguns were "upon the person" of Jane Doe.

the weapons. The application of the statutory presumption in this case therefore comports with the standard laid down in *Tot* v. *United States,* 319 U. S., at 467, and restated in *Leary* v. *United States,* 395 U. S., at 36. For there is a "rational connection" between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is "more likely than not to flow from" the former.[27]

---

[27] The New York Court of Appeals first upheld the constitutionality of the presumption involved in this case in *People* v. *Russo,* 303 N. Y. 673, 102 N. E. 2d 834 (1951). That decision relied upon the earlier case of *People* v. *Terra,* 303 N. Y. 332, 102 N. E. 2d 576 (1951), which upheld the constitutionality of another New York statute that allowed a jury to presume that the occupants of a room in which a firearm was located possessed the weapon. The analysis in *Terra,* the appeal in which this Court dismissed for want of a substantial federal question, 342 U. S. 938, is persuasive:

"[T]here can be no doubt about the 'sinister significance' of proof of a machine gun in a room occupied by an accused or about the reasonableness of the connection between its illegal possession and occupancy of the room where it is kept. Persons who occupy a room, who either reside in it or use it in the conduct and operation of a business or other venture—and that is what in its present context the statutory term 'occupying' signifies . . .—normally know what is in it; and, certainly, when the object is as large and uncommon as a machine gun, it is neither unreasonable nor unfair to presume that the room's occupants are aware of its presence. That being so, the legislature may not be considered arbitrary if it acts upon the presumption and erects it into evidence of a possession that is 'conscious' and 'knowing.'" 303 N. Y., at 335–336, 102 N. E. 2d, at 578–579.

See also Interim Report of Temporary State Commission to Evaluate the Drug Laws, N. Y. Leg. Doc. No. 10, p. 69 (1972), in which the drafters of the analogous automobile/narcotics presumption in N. Y. Penal Law § 220.25 (McKinney Supp. 1978), explained the basis for that presumption:

"We believe, and find, that it is rational and logical to presume that all occupants of a vehicle are aware of, and culpably involved in, possession of dangerous drugs found abandoned or secreted in a vehicle when the quantity of the drug is such that it would be extremely unlikely for an occupant to be unaware of its presence. . . .

"We do not believe that persons transporting dealership quantities of contraband are likely to go driving about with innocent friends or that

Respondents argue, however, that the validity of the New York presumption must be judged by a "reasonable doubt" test rather than the "more likely than not" standard employed in *Leary*.[28]   Under the more stringent test, it is argued that a statutory presumption must be rejected unless the evidence necessary to invoke the inference is sufficient for a rational jury to find the inferred fact beyond a reasonable doubt. See *Barnes* v. *United States,* 412 U. S., at 842–843.   Respondents' argument again overlooks the distinction between a permissive presumption on which the prosecution is entitled to rely as one not necessarily sufficient part of its proof and a mandatory presumption which the jury must accept even if it is the sole evidence of an element of the offense.[29]

---

they are likely to pick up strangers.   We do not doubt that this can and does in fact occasionally happen, but because we find it more reasonable to believe that the bare presence in the vehicle is culpable, we think it reasonable to presume culpability in the direction which the proven facts already point.   Since the presumption is an evidentiary one, it may be offset by any evidence, including the testimony of the defendant, which would negate the defendant's culpable involvement."

Legislative judgments such as this one deserve respect in assessing the constitutionality of evidentiary presumptions.   *E. g., Leary* v. *United States,* 395 U. S., at 39; *United States* v. *Gainey,* 380 U. S., at 67.

[28] "The upshot of *Tot, Gainey,* and *Romano* is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."   395 U. S., at 36.

[29] The dissenting argument rests on the assumption that "the jury [may have] rejected all of the prosecution's evidence concerning the location and origin of the guns."   *Post,* at 175–176.   Even if that assumption were plausible, the jury was plainly told that it was free to disregard the presumption.   But the dissent's assumption is not plausible; for if the jury rejected the testimony describing where the guns were found, it would necessarily also have rejected the only evidence in the record proving that the guns were found in the car.   The conclusion that the jury attached significance to the particular location of the handguns follows inexorably from the acquittal on the charge of possession of the machinegun and heroin in the trunk.

In the latter situation, since the prosecution bears the burden of establishing guilt, it may not rest its case entirely on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt. But in the former situation, the prosecution may rely on all of the evidence in the record to meet the reasonable-doubt standard. There is no more reason to require a permissive statutory presumption to meet a reasonable-doubt standard before it may be permitted to play any part in a trial than there is to require that degree of probative force for other relevant evidence before it may be admitted. As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the test described in *Leary*.

The permissive presumption, as used in this case, satisfied the *Leary* test. And, as already noted, the New York Court of Appeals has concluded that the record as a whole was sufficient to establish guilt beyond a reasonable doubt.

The judgment is reversed.

*So ordered.*

MR. CHIEF JUSTICE BURGER, concurring.

I join fully in the Court's opinion reversing the judgment under review. In the necessarily detailed step-by-step analysis of the legal issues, the central and controlling facts of a case often can become lost. The "underbrush" of finely tuned legal analysis of complex issues tends to bury the facts.

On this record, the jury could readily have reached the same result without benefit of the challenged statutory presumption; here it reached what was rather obviously a compromise verdict. Even without relying on evidence that two people had been seen placing something in the car trunk shortly before respondents occupied it, and that a machinegun and a package of heroin were soon after found in that trunk, the jury apparently decided that it was enough to hold the passengers to knowledge of the two handguns which were in

such plain view that the officer could see them from outside the car. Reasonable jurors could reasonably find that what the officer could see from outside, the passengers within the car could hardly miss seeing. Courts have long held that in the practical business of deciding cases the factfinders, not unlike negotiators, are permitted the luxury of verdicts reached by compromise.

MR. JUSTICE POWELL, with whom MR. JUSTICE BRENNAN, MR. JUSTICE STEWART, and MR. JUSTICE MARSHALL join, dissenting.

I agree with the Court that there is no procedural bar to our considering the underlying constitutional question presented by this case. I am not in agreement, however, with the Court's conclusion that the presumption as charged to the jury in this case meets the constitutional requirements of due process as set forth in our prior decisions. On the contrary, an individual's mere presence in an automobile where there is a handgun does not even make it "more likely than not" that the individual possesses the weapon.

I

In the criminal law, presumptions are used to encourage the jury to find certain facts, with respect to which no direct evidence is presented, solely because other facts have been proved.[1] See, e. g., Barnes v. United States, 412 U. S. 837, 840 n. 3 (1973); United States v. Romano, 382 U. S. 136, 138 (1965). The purpose of such presumptions is plain: Like certain other jury instructions, they provide guidance for jurors' thinking in considering the evidence laid before them.

---

[1] Such encouragement can be provided either by statutory presumptions, see, e. g., 18 U. S. C. § 1201 (b), or by presumptions created in the common law. See, e. g., Barnes v. United States, 412 U. S. 837 (1973). Unless otherwise specified, "presumption" will be used herein to refer to "permissible inferences," as well as to "true" presumptions. See F. James, Civil Procedure § 7.9 (1965).

Once in the juryroom, jurors necessarily draw inferences from the evidence—both direct and circumstantial. Through the use of presumptions, certain inferences are commended to the attention of jurors by legislatures or courts.

Legitimate guidance of a jury's deliberations is an indispensable part of our criminal justice system. Nonetheless, the use of presumptions in criminal cases poses at least two distinct perils for defendants' constitutional rights. The Court accurately identifies the first of these as being the danger of interference with "the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Ante,* at 156. If the jury is instructed that it must infer some ultimate fact (that is, some element of the offense) from proof of other facts unless the defendant disproves the ultimate fact by a preponderance of the evidence, then the presumption shifts the burden of proof to the defendant concerning the element thus inferred.[2]

But I do not agree with the Court's conclusion that the only constitutional difficulty with presumptions lies in the danger of lessening the burden of proof the prosecution must bear. As the Court notes, the presumptions thus far reviewed by the Court have not shifted the burden of persuasion, see *ante,* at 157–159, n. 16; instead, they either have required only that the defendant produce some evidence to rebut the inference suggested by the prosecution's evidence, see *Tot* v. *United States,* 319 U. S. 463 (1943), or merely have been suggestions to the

---

[2] The Court suggests that presumptions that shift the burden of persuasion to the defendant in this way can be upheld provided that "the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt." *Ante,* at 167. As the present case involves no shifting of the burden of persuasion, the constitutional restrictions on such presumptions are not before us, and I express no views on them.

It may well be that even those presumptions that do not shift the burden of persuasion cannot be used to prove an element of the offense, if the facts proved would not permit a reasonable mind to find the presumed fact beyond a reasonable doubt. My conclusion in Part II, *infra,* makes it unnecessary for me to address this concern here.

jury that it would be sensible to draw certain conclusions on the basis of the evidence presented.[3]  See *Barnes* v. *United States, supra,* at 840 n. 3.  Evolving from our decisions, therefore, is a second standard for judging the constitutionality of criminal presumptions which is based—not on the constitutional requirement that the State be put to its proof—but rather on the due process rule that when the jury is encouraged to make factual inferences, those inferences must reflect some valid general observation about the natural connection between events as they occur in our society.

This due process rule was first articulated by the Court in *Tot* v. *United States, supra,* in which the Court reviewed the constitutionality of § 2 (f) of the Federal Firearms Act.  That statute provided in part that "possession of a firearm or ammunition by any . . . person [who has been convicted of a crime of violence] shall be presumptive evidence that such firearm or ammunition was shipped or transported [in interstate or foreign commerce]."  As the Court interpreted the presumption, it placed upon a defendant only the obligation of presenting some exculpatory evidence concerning the origins of a firearm or ammunition, once the Government proved that the defendant had possessed the weapon and had been convicted of a crime of violence.  Noting that juries must be permitted to infer from one fact the existence of another essential to guilt, "if reason and experience support the inference," 319 U. S., at 467, the Court concluded that under some circumstances juries may be guided in making these inferences by legislative or common-law presumptions, even though they

---

[3] The Court suggests as the touchstone for its analysis a distinction between "mandatory" and "permissive" presumptions. See *ante,* at 157. For general discussions of the various forms of presumptions, see Jeffries & Stephan, Defenses, Presumptions, and Burden of Proof in the Criminal Law, 88 Yale L. J. 1325 (1979); F. James, Civil Procedure § 7.9 (1965). I have found no recognition in the Court's prior decisions that this distinction is important in analyzing presumptions used in criminal cases. Cf. *ibid.* (distinguishing true "presumptions" from "permissible inferences").

may be based "upon a view of relation broader than that a jury might take in a specific case," *id.,* at 468. To provide due process, however, there must be at least a "rational connection between the fact proved and the ultimate fact presumed"—a connection grounded in "common experience." *Id.,* at 467–468. In *Tot,* the Court found that connection to be lacking.[4]

Subsequently, in *Leary* v. *United States,* 395 U. S. 6 (1969), the Court reaffirmed and refined the due process requirement of *Tot* that inferences specifically commended to the attention of jurors must reflect generally accepted connections between related events. At issue in *Leary* was the constitutionality of a federal statute making it a crime to receive, conceal, buy, or sell marihuana illegally brought into the United States, knowing it to have been illegally imported. The statute provided that mere possession of marihuana "shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury." After reviewing the Court's decisions in *Tot* v. *United States, supra,* and other criminal presumption cases, Mr. Justice Harlan, writing for the Court, concluded "that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U. S., at 36 (footnote omitted). The Court invalidated the statute, finding there to be insufficient basis in fact for the conclusion that those who possess marihuana are more likely than not to know that it was imported illegally.[5]

---

[4] The analysis of *Tot* v. *United States* was used by the Court in *United States* v. *Gainey,* 380 U. S. 63 (1965), and *United States* v. *Romano,* 382 U. S. 136 (1965).

[5] Because the statute in *Leary* v. *United States* was found to be unconstitutional under the "more likely than not" standard, the Court explicitly declined to consider whether criminal presumptions also must follow

Most recently, in *Barnes* v. *United States,* we considered the constitutionality of a quite different sort of presumption—one that suggested to the jury that " '[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference . . . that the person in possession knew the property had been stolen.' " 412 U. S., at 840 n. 3. After reviewing the various formulations used by the Court to articulate the constitutionally required basis for a criminal presumption, we once again found it unnecessary to choose among them. As for the presumption suggested to the jury in *Barnes,* we found that it was well founded in history, common sense, and experience, and therefore upheld it as being "clearly sufficient to enable the jury to find beyond a reasonable doubt" that those in the unexplained possession of recently stolen property know it to have been stolen. *Id.,* at 845.

In sum, our decisions uniformly have recognized that due process requires more than merely that the prosecution be put to its proof.[6]   In addition, the Constitution restricts the court in its charge to the jury by requiring that, when particular factual inferences are recommended to the jury, those factual inferences be accurate reflections of what history, common sense, and experience tell us about the relations between events in our society.   Generally, this due process rule has been articulated as requiring that the truth of the inferred fact be more likely than not whenever the premise for the inference is true.   Thus, to be constitutional a presumption must be at least more likely than not true.

---

"beyond a reasonable doubt" from their premises, if an essential element of the crime depends upon the presumption's use. 395 U. S., at 36 n. 64. See n. 2, *supra.* The Court similarly avoided this question in *Turner* v. *United States,* 396 U. S. 398, 416 (1970).

[6] The Court apparently disagrees, contending that "the factfinder's responsibility . . . to find the ultimate facts beyond a reasonable doubt" is the only constitutional restraint upon the use of criminal presumptions at trial. See *ante,* at 156.

## II

In the present case, the jury was told:

"Our Penal Law also provides that the presence in an automobile of any machine gun or of any handgun or firearm which is loaded is presumptive evidence of their unlawful possession. In other words, [under] these presumptions or this latter presumption upon proof of the presence of the machine gun and the hand weapons, you may infer and draw a conclusion that such prohibited weapon was possessed by each of the defendants who occupied the automobile at the time when such instruments were found. The presumption or presumptions is effective only so long as there is no substantial evidence contradicting the conclusion flowing from the presumption, and the presumption is said to disappear when such contradictory evidence is adduced."

Undeniably, the presumption charged in this case encouraged the jury to draw a particular factual inference regardless of any other evidence presented: to infer that respondents possessed the weapons found in the automobile "upon proof of the presence of the machine gun and the hand weapon" and proof that respondents "occupied the automobile at the time such instruments were found." I believe that the presumption thus charged was unconstitutional because it did not fairly reflect what common sense and experience tell us about passengers in automobiles and the possession of handguns. People present in automobiles where there are weapons simply are not "more likely than not" the possessors of those weapons.

Under New York law, "to possess" is "to have physical possession or otherwise to exercise dominion or control over tangible property." N. Y. Penal Law § 10.00 (8) (McKinney 1975). Plainly, the mere presence of an individual in an automobile—without more—does not indicate that he exercises "dominion or control over" everything within it. As the

Court of Appeals noted, there are countless situations in which individuals are invited as guests into vehicles the contents of which they know nothing about, much less have control over. Similarly, those who invite others into their automobile do not generally search them to determine what they may have on their person; nor do they insist that any handguns be identified and placed within reach of the occupants of the automobile. Indeed, handguns are particularly susceptible to concealment and therefore are less likely than are other objects to be observed by those in an automobile.

In another context, this Court has been particularly hesitant to infer possession from mere presence in a location, noting that "[p]resence is relevant and admissible evidence in a trial on a possession charge; but absent some showing of the defendant's function at the [illegal] still, its connection with possession is too tenuous to permit a reasonable inference of guilt—'the inference of the one from proof of the other is arbitrary . . . .' *Tot v. United States,* 319 U. S. 463, 467." *United States* v. *Romano,* 382 U. S., at 141. We should be even more hesitant to uphold the inference of possession of a handgun from mere presence in an automobile, in light of common experience concerning automobiles and handguns. Because the specific factual inference recommended to the jury in this case is not one that is supported by the general experience of our society. I cannot say that the presumption charged is "more likely than not" to be true. Accordingly, respondents' due process rights were violated by the presumption's use.

As I understand it, the Court today does not contend that in general those who are present in automobiles are more likely than not to possess any gun contained within their vehicles. It argues, however, that the nature of the presumption here involved requires that we look, not only to the immediate facts upon which the jury was encouraged to base its inference, but to the other facts "proved" by the prosecution

as well. The Court suggests that this is the proper approach when reviewing what it calls "permissive" presumptions because the jury was urged "to consider all the circumstances tending to support or contradict the inference." *Ante*, at 162.

It seems to me that the Court mischaracterizes the function of the presumption charged in this case. As it acknowledges was the case in *Romano, supra*, the "instruction authorized conviction even if the jury disbelieved all of the testimony except the proof of presence" in the automobile.[7] *Ante*, at 159 n. 16. The Court nevertheless relies on all of the evidence introduced by the prosecution and argues that the "permissive" presumption could not have prejudiced defendants. The possibility that the jury disbelieved all of this evidence, and relied on the presumption, is simply ignored.

I agree that the circumstances relied upon by the Court in determining the plausibility of the presumption charged in this case would have made it reasonable for the jury to "infer that each of the respondents was fully aware of the presence of the guns and had both the ability and the intent to exercise dominion and control over the weapons." But the jury was told that it could conclude that respondents possessed the weapons found therein from proof of the mere fact of respondents' presence in the automobile. For all we know, the jury rejected all of the prosecution's evidence

---

[7] In commending the presumption to the jury, the court gave no instruction that would have required a finding of possession to be based on anything more than mere presence in the automobile. Thus, the jury was not instructed that it should infer that respondents possessed the handguns only if it found that the guns were too large to be concealed in Jane Doe's handbag, *ante*, at 163; that the guns accordingly were in the plain view of respondents, *ibid;* that the weapons were within "easy access of the driver of the car and even, perhaps, of the other two respondents who were riding in the rear seat," *ibid.;* that it was unlikely that Jane Doe was solely responsible for the placement of the weapons in her purse, *ibid.;* or that the case was "tantamount to one in which the guns were lying on the floor or the seat of the car in the plain view of the three other occupants of the automobile." *Ante*, at 164.

concerning the location and origin of the guns, and based its conclusion that respondents possessed the weapons solely upon its belief that respondents had been present in the automobile.[8] For purposes of reviewing the constitutionality of the presumption at issue here, we must assume that this was the case. See *Bollenbach* v. *United States,* 326 U. S. 607, 613 (1946); cf. *Leary* v. *United States,* 395 U. S., at 31.

The Court's novel approach in this case appears to contradict prior decisions of this Court reviewing such presumptions. Under the Court's analysis, whenever it is determined that an inference is "permissive," the only question is whether, in light of all of the evidence adduced at trial, the inference recommended to the jury is a reasonable one. The Court has never suggested that the inquiry into the rational basis of a permissible inference may be circumvented in this manner. Quite the contrary, the Court has required that the "evidence *necessary to invoke the inference* [be] sufficient for a rational juror to find the inferred fact . . . ." *Barnes* v. *United States,* 412 U. S., at 843 (emphasis supplied). See *Turner* v. *United States,* 396 U. S. 398, 407 (1970). Under the presumption charged in this case, the only evidence necessary to invoke the inference was the presence of the weapons in the automobile with respondents—an inference that is plainly irrational.

---

[8] The Court is therefore mistaken in its conclusion that, because "respondents were not 'hitchhikers or other casual passengers,' and the guns were neither 'a few inches in length' nor 'out of [respondents'] sight,' " reference to these possibilities is inappropriate in considering the constitutionality of the presumption as charged in this case. *Ante,* at 163. To be sure, respondents' challenge is to the presumption as charged to the jury in this case. But in assessing its application here, we are not free, as the Court apparently believes, to disregard the possibility that the jury may have disbelieved all other evidence supporting an inference of possession. The jury may have concluded that respondents—like hitchhikers—had only an incidental relationship to the auto in which they were traveling, or that, contrary to some of the testimony at trial, the weapons were indeed out of respondents' sight.

In sum, it seems to me that the Court today ignores the teaching of our prior decisions. By speculating about what the jury may have done with the factual inference thrust upon it, the Court in effect assumes away the inference altogether, constructing a rule that permits the use of any inference—no matter how irrational in itself—provided that otherwise there is sufficient evidence in the record to support a finding of guilt. Applying this novel analysis to the present case, the Court upholds the use of a presumption that it makes no effort to defend in isolation. In substance, the Court—applying an unarticulated harmless-error standard—simply finds that the respondents were guilty as charged. They may well have been, but rather than acknowledging this rationale, the Court seems to have made new law with respect to presumptions that could seriously jeopardize a defendant's right to a fair trial. Accordingly, I dissent.