■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENCION NEISS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered September 13, 1978, convicting him of grand larceny in the third degree and theft of services, upon a plea of guilty, and imposing sentence. Judgment reversed, as a matter of discretion in the interest of justice, plea vacated and case remitted to Criminal Term for further proceedings on the indictment. In September, 1977 the defendant was indicted for: (1) various degrees of larceny (12 counts); (2) theft of services (28 counts); and (3) criminal tampering (15 counts). The indictment was essentially premised upon the defendant, a landlord of some 30 Brooklyn apartment buildings, having allegedly stolen substantial quantities of natural gas by interfering with the supplying of such commodity by the Brooklyn Union Gas Company. On December 1, 1977 the defendant moved, *inter alia,* to dismiss the indictment on the ground that (1) gas did not constitute "property" within the meaning of subdivision 1 of section 155.00 of the Penal Law and therefore it could not be the subject of a larceny, and (2) the statutory presumption contained in the "theft-of-services" statute (Penal Law, § 165.15, subd 6) was irrational and unconstitutional. Criminal Term, by order dated January 5, 1978 (92 Misc 2d 839), held essentially that: (1) natural gas did constitute "property", which could properly be the subject of a larceny; and (2) the issue of the constitutional validity of the disputed theft-of-services presumption was "premature" because "There is nothing in the record to indicate the quantum of proof the State will introduce upon the trial and the extent to which it will rely upon these presumptions in establishing defendant's violation of such statute". Thereafter, the defendant entered into plea negotiations with the People and an agreement was reached whereby the defendant entered a plea of guilty to one count of grand larceny in the third degree and one count of theft of services, in full satisfaction of the indictment. It was further agreed that the defendant would be subject, *inter alia,* to criminal fines of $40,000 together with making restitution to the Brooklyn Union Gas Company in the sum of $60,000. Finally, it was expressly understood by all parties to the plea negotiations, including Criminal Term, that, by virtue of the entry of the plea, the defendant had not "waived" his right to contest the constitutionality of the statutory presumption of subdivision 6 of section 165.15 of the Penal Law before any appellate court. Indeed, at the point when it seemed to the defendant that his right to appeal on this issue had not been preserved, he moved to withdraw the guilty plea. However, on September 13, 1978, upon being assured by Criminal Term that his right to appeal on this matter had not been compromised, the defendant's motion was denied and he was sentenced in accordance with the agreement. Aggrieved, the defendant now appeals from the judgment. Prior to the recent amendment to the definition of property which now unequivocally includes the commod-

ity gas as a thing of value which may be the subject of a larceny (L 1978, ch 420, § 3, eff Jan. 1, 1979), the Penal Law defined property as (Penal Law, § 155.00, subd 1): "any money, personal property, real property, thing in action, evidence of debt or contract, or any article, substance or thing of value". Defendant's contention that gas is not included within the above definition must be rejected. The development of the definition of "property" in the Penal Law established a plain dichotomy between the concept of gas as an identifiable substance of intrinsic value, and the concept of affording the service of supplying that commodity by utilization of other property such as metering equipment and supply lines. Whereas the former concept allows prosecution under the larceny statutes, the latter concept allows prosecution under the theft-of-services statutes. This dichotomy was expressly stated in the original definition of property contained in the proposed revised Penal Law (L 1965, ch 1030), which was to become effective on September 1, 1967: " 'Property' means any money, personal property, real property, thing in action, evidence of debt or contract, or article of value of any kind. Commodities of a public utility nature such as gas, electricity, steam and water constitute property, but the supplying of such a commodity *to premises from an outside source* by means of wires, pipes, conduits or other equipment shall be deemed a rendition of a service rather than a sale or delivery of property." However, prior to the effective date of the statute, the definition of property was amended to the form with which we are now concerned. The deletion of the expressed dichotomy between gas as property and the supplying of gas as a service was explained by the Temporary Commission on Revision of the Penal Law and Criminal Code in the following memorandum: "Section 155.00: 'Commodities of a public nature,' presently specifically included under 'property', actually fall within 'article, substance or thing of value.' It is proposed to shift the clause concerning *the supplying* of such commodities to the definition of 'service.' Thus, in § 165.10 the definition of 'service' is amended to include expressly 'the supplying of commodities of a public utility nature such as gas, electricity, steam and water' " (NY Legis Ann 1967, p 20; emphasis supplied). Section 165.10 of the Penal Law was repealed in 1969 and the substance of the section was shifted to subdivision 8 of section 155.00 of the Penal Law (L 1969, ch 115), thereby allowing a broader application of penal sanctions (see Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 155.00, p 105). This change further suggests that there was no legislative intention to bar a prosecution for larceny. Contrary to the interpretation urged by the defendant, the above enunciated dichotomy does not distinguish between the abstract commodity gas and that gas which is supplied by a public utility, but rather, the distinction is between the commodity itself, and the further, independent, act of physically supplying the commodity. By distinguishing between gas the commodity as property, and the actual supplying of the commodity as a service, and holding that the defendant may be properly prosecuted under theories of larceny (for the actual taking of the property gas) and theft of services (for the wrongful receipt of the service of having the gas supplied, effected by having tampered with equipment designed to convey and meter the property) we are, of course, cognizant of the substantial overlap between these two types of crimes. Generally, a successful theft of services will result in a theft of the commodity. However, this overlap does not negate the conceptualization of the supplying of the commodity, and all that is therein implied (such as maintaining gas lines, valve systems, employing maintenance crews, etc.), as a service which is separate and independent from the commodity itself. Nor

does the overlap in the criminal statutes prevent prosecution under the more general larceny provisions. "Unless there is evidence of legislative intent to the contrary (see, e.g., *People v. Knatt,* 156 N. Y. 302), the existence of a specific statute prohibiting the conduct involved, does not prevent prosecution under a more general statute. *(People v. Bergerson,* 17 N. Y. 398, 401; *People v. Hines,* 284 N. Y. 93, 105.) The same result follows even where the overlap is inherent in the definitions of two offenses." *(People v Eboli,* 34 NY2d 281, 287.) In the instant case there is no legislative bar to a prosecution under the larceny statutes. Indeed, the afore-mentioned 1979 amendment suggests the contrary result. Accordingly, we conclude that the commodity gas can constitute property, the theft of which is properly prosecuted under the larceny statutes. Contrary to the assurances given by Criminal Term, the defendant has not preserved his right to challenge the evidentiary presumption contained in section 165.15 of the Penal Law. In the absence of a factual record ·which indicates to what extent, if any, the presumption was relied upon, there can be no viable constitutional challenge (see *County Ct. of Ulster County v Allen,* 442 US 140, 154-155, 162-163). Having pleaded guilty, no such factual record was set forth. However, since the instant record unequivocally shows that the defendant entered his guilty plea upon the above assurance, the interest of justice requires that we reverse and vacate defendant's guilty plea (cf. *People v Selikoff,* 35 NY2d 227). In doing so, we emphasize that the evidentiary presumption is no more than a permissive inference which is normally not subject to a constitutional challenge on its face *(County Ct. of Ulster County v Allen, supra,* pp 2224-2226). As here pertinent, subdivision 6 of section 165.15 of the Penal Law provides that "In any prosecution under this subdivision proof that service has been intentionally diverted from passing through a meter * * * shall be presumptive evidence that the person who accepts or receives the use and benefit of such service has done so with knowledge of the condition". We fully agree with the several courts which have expressly construed this language as constituting a permissive inference (see *People v Robinson,* 97 Misc 2d 47, 62; *People v McLaughlin,* 93 Misc 2d 980, 988; *People v Casteneda,* 92 Misc 2d 687, 690). Furthermore, the instant statute is analogous to other New York statutes which have been constitutionally upheld as creating permissive inferences (see, e.g., *County Ct. of Ulster County v Allen, supra; People v Lemmons,* 40 NY2d 505 [Penal Law, § 265.15]; *People v Leyva,* 38 NY2d 160 [Penal Law, § 220.25]; Richardson, Evidence [Prince, 10th ed], §§ 55-58). The test of whether a permissive inference, or other evidentiary device is constitutional, is that such device "must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt" *(County Ct. of Ulster County v Allen, supra,* p 2224). Permissive inferences are generally upheld to the extent that they allow, without requiring, the fact finder to infer the elemental fact from proof of the basic fact without placing any burden upon the defendant (p 2224). This test is fully satisfied by the presumption contained in the theft-of-services statute. The statute does no more than to permit the establishment of a prima facie case by proof of the basic fact. Although the inference of guilt is allowed, it is not required and there is neither a dilution of the reasonable doubt standard nor a shifting of the prosecution's burden of proof. Because the statute creates a permissive inference which the jury is free to reject it is obvious that there can be no challenge to the applicability of the inference in the absence of a trial. We note that the usual standard in determining whether the presumption is valid is that there must be a

rational relation between the basic fact which is proved and the ultimate fact which is to be inferred. This rational relation requires that the ultimate fact be more likely than not to flow from the proved basic fact (see *Tot v United States,* 319 US 463, 467; *Leary v United States,* 395 US 6). There is no question that the instant presumption has a rational basis (see *Eff-Ess Inc. v New York Edison Co.,* 237 App Div 315). Contrary to the defendant's contentions, the reasonable doubt standard is only applicable when the basic fact is the sole evidence introduced which is probative on the ultimate question of guilt *(County Ct. of Ulster County v Allen, supra,* pp 2229-2230). Using the reasonable doubt standard when the only proof of guilt is the presumption insures that the prosecution's ultimate burden of proof is not diluted. The applicability of the more stringent standard may only be determined at trial. The defendant was fined $40,000. Section 80.00 of the Penal Law provides for the imposition of a fine which is not to exceed the greater of $5,000 or twice the amount of defendant's gain from the commission of the crime. In the latter situation, the sentencing court must make specific findings of fact as to the defendant's gain (cf. *People v Mature Enterprises,* 35 NY2d 520, 524). If on remand the parties choose to stipulate to a figure which accurately reflects the amount of defendant's gain, it must be clearly set forth in the record. Rabin, J. P., Gulotta, Margett and O'Connor, JJ., concur.