■ The People of the State of New York, Respondent, v

Louis PADUANO, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Lawrence, J.), rendered December 5, 1984, convicting him of grand larceny in the second degree, upon a jury verdict, and imposing a sentence of five years' probation with a term of six months' imprisonment as a condition thereof, and a fine of $268,112.

Justice Lazer has been substituted for the late Justice Gibbons (see, 22 NYCRR 670.2 [c]).

Ordered that the judgment is modified, on the law, by reducing the fine from $268,112 to $253,512. As so modified, the judgment is affirmed, and the case is remitted to the County Court, Nassau County, for further proceedings pursuant to CPL 460.50 (5).

The defendant, a fuel oil retailer, was convicted of grand larceny in the second degree based on the theft of fuel oil from his supplier, Northville Industries (hereinafter Northville). Gerald Clifton, Northville's terminal manager, testified under immunity that the defendant had approached him regarding the possibility of purchasing "extra gallonage" and had agreed to purchase excess fuel oil from Clifton at a price significantly below the market rate. Clifton thereafter began fraudulently creating an excess fuel inventory at Northville's terminal by falsifying the inventory readings. On specified dates that the defendant agreed upon, Clifton would arrive at the terminal several hours before the normal opening time of 6:00 A.M., relieve the night guard, disconnect the meter which would ordinarily record the amount of oil dispensed, and fill the defendant's trucks with fuel oil. During a period when the price of fuel oil was between 35 cents and 73 cents per gallon, Clifton initially charged the defendant 10 cents per gallon, with the price ultimately rising to 10 cents below the market rate. The defendant had to pay cash for these purchases, despite Northville's policy of not accepting cash payments.

The defendant acknowledged receiving the early morning truckloads of oil at a discount, but claimed that they were bona fide purchases, and that the discount was to compensate him for shortages which had previously resulted from Northville's practice of heating the oil, thereby causing its volume to expand. The defendant testified that it was his understanding that Northville's president Harold Bernstein, was aware of these purchases and had agreed to the discount price, provided the defendant paid in cash.

Viewed in the light most favorable to the People (see, People v Malizia, 62 NY2d 755, cert denied 469 US 932; People v

*Contes,* 60 NY2d 620), the evidence is sufficient to sustain the conviction. Clifton's testimony establishes a joint scheme to steal fuel from Northville. Although such accomplice testimony cannot by itself support a conviction *(see,* CPL 60.22), the record contains ample corroborative evidence. Northville's records establish that 34,401 gallons of fuel oil were removed from its inventory without receipts being printed during December 1979. On two occasions during that month, private investigators hired by Northville observed a man in a green Volkswagen arrive at the terminal before normal operating hours, relieve the night guard, and do "something mechanical" in the area of the pumps. The defendant's trucks arrived shortly thereafter. Clifton testified that he drove a green Volkswagen at that time. The defendant's drivers confirmed the fact of the early morning pickups and that they received no receipts on those occasions, even though the normal practice was to obtain receipts before leaving the terminal. One driver testified that he received his instructions to make the early morning pickups from the defendant and that when he asked the defendant why he was not receiving receipts, he was told "to mind [his] own business and just do [his] work". The corroborative evidence need not prove the crime independently; "[a]ll that is necessary is to connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth" *(People v Daniels,* 37 NY2d 624, 630; *see, People v Tillotson,* 63 NY2d 731; *People v Moses,* 63 NY2d 299; *People v Glasper,* 52 NY2d 970; *People v Hudson,* 51 NY2d 233). Direct observation of the conduct described by Clifton is more than sufficient to constitute the required corroborative evidence under this standard. The secretive nature of the pickups, the defendant's response to his employee when questioned about them, and the low price at which the purchases were made establish that the oil was taken without Northville's consent, that the defendant knew this, and that he intentionally participated in such a criminal scheme.

There is no merit to the defendant's claim that the trial court unfairly prevented him from presenting his defense to the jury. The defendant's argument is that the court excluded proof that the early morning pickups were part of a legitimate business transaction by precluding him from testifying that his inventory cards and Northville receipts had never been returned to him after being seized illegally by Northville investigators in connection with prior civil litigation. The record reflects, however, that the defendant testified at length

to his claim that the pickups were designed to remedy earlier shortages, and that he or his father received receipts for all of them. The offer of testimony concerning seizure of the receipts was simply an attempt to anticipate any negative inference which might have arisen from his failure to produce evidence, presumably within his control, in support of his testimony. The People never sought to invoke such an inference, however, and thus such evidence would have served only to bolster his testimony. It was therefore properly excluded.

The defendant's objections to the trial court's instructions to the jury are either unpreserved for our review or without merit. The defendant requested a specific charge that the People were required to disprove the defendant's claim that he thought the deliveries were made under Northville's authority. When the trial court denied this request, on the ground that the matter was covered sufficiently in its charge on criminal intent, the defendant's attorney responded that he had "no real exception" to that. Thus, he effectively withdrew his request to charge which would by itself have been sufficient to preserve the issue for appellate review (see, CPL 470.05 [2]), and placed the court in the same position as it would have been had no request been made. Since the trial court was not alerted to the error now claimed, the defendant may not raise it on appeal (see, People v Whalen, 59 NY2d 273).

The trial court properly declined to give a missing witness charge based upon the failure of the People to call Harold Bernstein, Northville's president, as a witness. A missing witness charge is appropriate where it is shown that "the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party" (People v Gonzalez, 68 NY2d 424, 427). The defendant did not make such a showing here. Although Bernstein was the president of the corporate victim of the theft, there is no evidence that he had any direct knowledge of the circumstances of the crime. Two other corporate employees who were more directly involved with terminal operations, Earl Espeland, Clifton's supervisor, and James Foster, his deputy, did give testimony for the People. Thus, Bernstein was not a witness the People would naturally be expected to call. It was during the defendant's case that Bernstein's name was injected into the proceedings when the defendant testified that, on several occasions prior to the

incidents which resulted in the convictions, he had spoken to Bernstein concerning the shortages he claimed. There was no obligation on the People's part to call Bernstein as a rebuttal witness and the missing witness charge was properly denied.

The trial court did not err in its accomplice charge. The defendant does not contest the trial court's finding that Clifton was an accomplice as a matter of law. Rather, he argues that it was unduly prejudicial for the court to use the word "accomplice" in making its finding that the corroboration requirement for accomplice testimony (see, CPL 60.22) applied to Clifton. The word "accomplice", however, is a statutorily defined term (see, CPL 60.22 [2]) having particular legal significance; any attempt to use another term would have resulted in unwarranted confusion. Moreover, the use of a different term would not have changed the fact that Clifton was properly found to be an accomplice as a matter of law. Since this finding is not unduly prejudicial (see, People v Koziuk, 57 NY2d 784), the use of the term itself also cannot be prejudicial. The defendant's second contention with respect to the accomplice charge, that the trial court did not sufficiently explain to the jury the standard for evaluating expert testimony, is not preserved for our review, since the defendant neither requested such a charge nor objected to the court's failure to so charge.

The defendant's claims of prosecutorial misconduct are also either unpreserved or without merit. The defendant's counsel withdrew his objection to the use of prior bad acts in cross-examining the defendant and did not object to the prosecutor's allegedly improper summation comments. There is no evidence in the record to support the defendant's contention that the People withheld evidence gathered by Northville's agents.

The defendant's final argument concerns the amount of the fine imposed. The Penal Law provides that a fine of up to $5,000 or "double the amount of the defendant's gain from the commission of the crime" may be imposed upon conviction of a felony (see, Penal Law § 80.00 [1]). In order to impose a fine of double the gain, the court must make a specific finding of the amount of the gain (see, Penal Law § 80.00 [3]; People v Neiss, 73 AD2d 938; People v Williams, 46 AD2d 693; People v Yannicelli, 40 AD2d 564, affd 33 NY2d 621). Here, the court simply announced that "the Defendant is fined the amount of $268,112, which is twice the established gain, if equally allocated between the defendant and one Gerald Clifton". Although the better practice would have been to explain the derivation of that figure, its source is readily apparent and

available for our review, and therefore the court's failure to elucidate is not by itself a basis for reversal.

Prior to the imposition of sentence, the People set forth their assessment of the defendant's gain and proposal for the amount of the fine in a letter to the court. Presumably, the court agreed with these calculations, since the fine it imposed was in the amount suggested by the People, to wit, $268,112. To arrive at this figure, the People took Clifton's estimate of the amount of oil he had delivered to the defendant, between 20,000 and 40,000 gallons per month for each of the eight months of the heating season from September 1976 to December 1979, adopted the lower of those figures as the actual amount delivered, and then added to that the 34,401 gallons which were delivered without receipts during December 1979, as established by Northville's inventory records. The People then took this figure for the total gallonage stolen and multiplied it by the market price of fuel oil for each year. This dollar amount was apportioned equally between Clifton and the defendant, and the defendant's share was doubled to arrive at the permissible fine.

The defendant's only argument with respect to the fine is that Clifton's estimate that 20,000 to 40,000 gallons were delivered to the defendant each month is speculative and conjectural. Although an estimate, however, the figure is based on Clifton's personal knowledge and stands unrefuted on the record. By adopting the lower of these figures as the amount of the delivery the court properly limited the amount of the fine to the gain which was established on the record.

The amount of the gain for December 1979 was, however, improperly determined. To arrive at the gallonage delivered in that month the court used both Clifton's estimate and the loss actually established from Northville's inventory records. This was obviously an oversight, which can be rectified simply by reducing the amount of the fine by the dollar value of the 20,000 gallon estimate. Since the price of oil established for that period was 73 cents per gallon, the amount of the fine should be reduced by $14,600 to $253,512. Lazer, J. P., Mangano, Kooper and Spatt, JJ., concur.