**UNITED STATES of America, Appellee,**

v.

**Leroy L. JAMES, Also Known as Michael Grodon, Appellant.**

**No. 94–1317.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1994.

Decided July 14, 1994.

Jacqueline Annette Cook, Kansas City, MO, argued, for appellant.

William L. Meiners, Kansas City, MO, argued (Stephen L. Hill, Jr. and William L. Meiners, on the brief), for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MELLOY, District Judge.*

PER CURIAM.

In June, 1993, Leroy James and Mirta Medina were arrested on drug charges when the train on which they were traveling stopped in Kansas City, Missouri. In September, a federal jury convicted Mr. James on two drug-related counts—conspiracy to possess marijuana with intent to distribute it, and aiding and abetting the possession of marijuana with intent to distribute it. Ms. Medina, who had pleaded guilty to the conspiracy charge, testified against Mr. James at his trial in accordance with her plea agreement. In early 1994, the trial court sentenced Mr. James to 21 months' imprisonment on each count, the sentences to run consecutively. Mr. James appeals, challenging the admission at trial of references to his Jamaican citizenship, the sufficiency of the evidence, and the trial court's failure to depart downward from the relevant federal sentencing guidelines range. We affirm the

* The HONORABLE MICHAEL J. MELLOY, Chief Judge, United States District Court for the North-

trial court.[1]

## I.

■ In pretrial proceedings, the defense filed a motion *in limine* seeking to preclude any references to the "race, citizenship, or nationality" of Mr. James. The trial court reserved a ruling on that motion, wanting to consider any such references "in context."

During Ms. Medina's testimony for the government, she described as Jamaican several other persons allegedly involved in relevant events. The defense made no objection to any of that testimony. Ms. Medina identified Mr. James in court as the "[b]lack gentleman" wearing a "black suit, tan tie, [and] white shirt."

When asked by the government if Mr. James had "indicate[d] the purpose of his [train] travel" during initial police questioning, one of the police officers who arrested Mr. James replied, "Yes. He said he was from Jamaica and that he—" At that point, the defense objected to the reference to Jamaica but made no motion for mistrial. The trial court overruled the objection and denied the defense's earlier motion *in limine*, stating that "[t]his is a natural question, and it may have some relevance" and that "I don't see any real prejudice in it." When the police officer resumed his testimony, he said only that Mr. James had indicated that "he was just traveling across the United States, looking at it." The officer made no further references to Jamaica. When asked to identify Mr. James in court, the officer described him as "the gentleman ... in the dark-colored suit and the white shirt and multicolored tie."

During cross-examination of Mr. James himself, the government asked him, "You told [the officer] you were Jamaican, going across country, so you could see a little of the United States. Is that what you told him?" Mr. James answered, "No." At a later point in cross-examination of Mr. James, the government asked, "Now, [Ms. Medina] indicated that it was a Jamaican individual who picked her up at the [hotel where she and

Mr. James were staying]. Is that correct?" Mr. James responded, "I don't know if the person was a Jamaican, because he was ... playing loud music" (and therefore Mr. James could not hear the person talk). The defense made no objection to any of that testimony.

Finally, during closing argument, the government referred to one of the other people allegedly involved in relevant events as "a Jamaican individual." The defense made no objection to that portion of the argument, nor, as far as we can tell, did the defense make any requests for instructions with reference to the mentions of Jamaican citizenship that had occurred during the trial.

It appears to us that the initial reference to Mr. James himself as Jamaican—by the police officer in response to a question about why Mr. James said he was traveling by train—was accidental and unexpected by the government. The other reference, in a cross-examination question summarizing the earlier response, was minimal. Neither reference implied, in our view, a connection between Jamaican citizenship and the likelihood of involvement in the drug trade. That fact distinguishes this case from others where references to ethnic origin were tied to implications of likelihood of involvement in criminal activity because of that ethnic origin, and therefore required reversal of a conviction. *See, e.g., United States v. Vue*, 13 F.3d 1206, 1213 (8th Cir.1994); *United States v. Cruz*, 981 F.2d 659, 663–64 (2d Cir.1992); *United States v. Rodriguez Cortes*, 949 F.2d 532, 541–43 (1st Cir.1991); and *United States v. Doe*, 903 F.2d 16, 20–28 (D.C.Cir.1990). We note, in addition, that Mr. James was never explicitly identified by witnesses as being of Jamaican citizenship and that the references to other persons as Jamaican appear to have occurred in a descriptive context only, unaccompanied by any suggestion that Jamaican citizenship implied involvement in the drug trade. Under those circumstances, we reject the argument that Mr. James was deprived of a fair trial because of the admission of references to his Jamaican citizenship. We are convinced that any error, if error there was, was harmless.

---

ern District of Iowa, sitting by designation.

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

## II.

We have read the transcript of the trial. Viewed in the light most favorable to the government, *see, e.g., United States v. Jones,* 990 F.2d 1047, 1048 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994), the evidence against Mr. James is sufficient on both counts.

## III.

■ Finally, Mr. James argues that the trial court improperly failed to depart downward from the relevant federal sentencing guidelines range. We have read the transcript of the sentencing hearing. It is clear from that transcript that the trial court considered the possibility of downward departure and rejected it. That decision is neither reviewable, *see, e.g., United States v. Brown,* 18 F.3d 1424, 1425 (8th Cir.1994) *(per curiam* ), nor, in our view, an abuse of discretion in the circumstances of this case.

## IV.

For the reasons stated, we affirm the trial court.