United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2590

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United |
| | * | States District Court for |
| v. | * | the District of Nebraska. |
| | * | |
| George W. Turechek, III, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 13, 1998

Filed: March 12, 1998

_____

Before LOKEN and MURPHY, Circuit Judges, and KYLE, District Judge.[1]

KYLE, District Judge.

George Turechek ("Turechek") pled guilty to one count each of conspiracy to travel in interstate commerce and to use a facility in interstate commerce with intent to commit murder, and aiding and abetting travel in interstate commerce with intent to

_____

[1]    The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

commit murder, both in violation of 18 U.S.C. § 1958 (1997). The district court[2] sentenced him to a term of imprisonment of 87 months. Turechek now challenges this sentence. We affirm.

## I.    Background

Dianna Shirk was a friend of Turechek's who had recently separated from her husband, Victor Shirk, and was involved in a custody battle with him. In March 1995, a Nebraska state court had ordered Dianna Shirk to move out of the Shirks' Alliance, Nebraska residence and had granted custody of the children to her husband. In the following months, Dianna Shirk was depressed and angry at her husband, and in June 1995, she stated to Turechek that she wished someone would "take care of" her husband. Turechek responded that he could take care of Victor Shirk.

Later that summer, Turechek began talking with Scott Simianer ("Simianer"), making general inquiries as to whether Simianer felt that he could ever kill someone. Over time, however, Turechek's questions became more pointed, and he identified the proposed victim as Victor Shirk. Simianer told Turechek that he was not willing to kill Victor Shirk himself, but he could find someone else to do it.

In October 1995, Turechek, who was in Alliance, Nebraska, called Simianer in Custer, South Dakota, and arranged to meet him. The next day, Turechek and Simianer

---

[2] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

met with Dianna Shirk to discuss the proposed murder of her husband. At the meeting, Turechek gave Simianer $3,750, and agreed to pay him another $3,750 after Victor Shirk was killed. The three participants agreed that the murder would take place within four weeks.

In fact, Simianer was unwilling to kill Victor Shirk himself and did not know anyone who would do so. The extent of Simianer's involvement in the charged conspiracy was to lie to Dianna Shirk and Turechek about the existence of a "hit man" and to accept money from Turechek.

When the murder had not taken place by March 1996, Turechek and Dianna Shirk visited Simianer in Custer, South Dakota, to find out what was causing the delay. Simianer told them that the "hit man" was "laying low," but would soon carry out the murder. Shortly thereafter, Simianer went to the police in Alliance, Nebraska, and told them about the conspiracy. The police asked Simianer to maintain the pretense of setting up the murder, and had him arrange a meeting between Turechek and Lieutenant Norbert Liebig of the Nebraska State Police, who was posing as the "hit man."

After this meeting, Turechek called Dianna Shirk to tell her that he had met the "hit man," and Turechek agreed to meet her in Grand Island, Nebraska, to talk about the situation. When they met in Grand Island, Turechek told Dianna Shirk how to contact the "hit man" and gave her $3,750, the remainder of the money owed to Simianer.

Later that day, the FBI contacted Turechek, who agreed to cooperate with the

FBI in its investigation of the matter. As a part of this cooperation, Turechek called Dianna Shirk and told her that the "hit man" would be contacting her. In return for Turechek's cooperation, the FBI agreed to support a downward departure from the applicable guidelines. Approximately two weeks later, Liebig -- posing as the "hit man" -- called Dianna Shirk and arranged to meet her at a motel in Des Moines, Iowa.

When they met in Des Moines, Dianna Shirk instructed Liebig to carry out the murder, and gave him detailed instructions about her husband's schedule. Less than one week later, Liebig contacted her and told her that the murder had been carried out. Dianna Shirk then met Liebig and paid him the second installment of the agreed price of $7,500, at which point she was arrested. No murder was ever carried out.

Turechek entered pleas of guilty to counts I and V of the Superseding Indictment, which charged him with conspiracy to travel in interstate commerce and to use a facility in interstate commerce with intent to commit murder, and aiding and abetting travel in interstate commerce with intent to commit murder. In the plea agreement, the Government agreed to move for a downward departure based on Turechek's "substantial assistance," and to recommend a sentence of 78 months, the same sentence that Dianna Shirk received when she pled guilty to charges arising out of the same conspiracy to kill Victor Shirk. In his plea agreement, Turechek reserved his right to seek a more lenient sentence, but agreed that by doing so he would release the Government from its obligation to recommend the sentence of 78 months. Turechek did invoke this right, filing his own motion for a downward departure. When he did so, the Government withdrew its motion. Turechek's motion was denied, and he was sentenced to 87 months, the minimum term of imprisonment possible under the

-4-

Guidelines applicable to him. This appeal followed.

## II. Argument

### A. Did the District Court Err in not Departing Downward?

Turechek argues that the district court erred in denying his motion for a downward departure. He claims that the base offense level under which he was sentenced overstated his role in the offense, for three reasons: (1) he withdrew from the conspiracy and did not participate in actually consummating the objective of the conspiracy; (2) because Simianer was "conning" him and Dianna Shirk, there was never any threat of actual harm to Victor Shirk; and (3) Dianna Shirk received a shorter sentence (78 months) than he did, although her conduct was more reprehensible than his and she had a higher level of culpability.

When a district court considers a motion for a downward departure and rejects it, that decision is not reviewable. United States v. James, 30 F.3d 84, 86 (8th Cir. 1994) (per curiam); United States v. Brown, 18 F.3d 1424, 1425 (8th Cir. 1994) (per curiam). The district court here was clearly aware of its discretion to depart downward, considered Turechek's request for a downward departure, and rejected that request.[3] (See Sentencing Tr. at 49-52.) This Court, therefore, will not review this

---

[3] The Court notes that, during Turechek's sentencing hearing, the district court engaged in a careful, thorough, and well-reasoned analysis of Turechek's arguments on both the issue of the downward departure and the constitutionality of § 2E1.4.

-5-

decision.

**B.      Does U.S.S.G. § 2E1.4 Lack a Rational Basis and/or Violate the Due Process Clause of the Fifth Amendment?**

Turechek argues that the provision of the United States Sentencing Guidelines under which he was sentenced, U.S.S.G. § 2E1.4, is unconstitutional because it is irrational, contrary to the legislative mandate of the underlying statute, and inconsistent with the spirit and intent of the Sentencing Guidelines. (Appellant's Br. at 16.)

The base offense level used in § 2E1.4 (Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire) is the greater of 32 or the offense level applicable to the underlying conduct. Under the Guidelines, a person in criminal history category I with a base offense level of 32 would be sentenced to a term of imprisonment between 121 and 151 months. See United States Sentencing Commission, Guidelines Manual, Sentencing Table (Nov. 1997). A person in criminal history category VI with the same base offense level of 32 would face a Guidelines range of between 210 and 262 months. (Id.) However, the statutory maximum term of imprisonment for the statute underlying § 2E1.4 is ten years. See 18 U.S.C. § 1958 (1997). Therefore, two level 32 defendants, one in criminal history category I and the other in criminal history category VI, would receive the same term of imprisonment if sentenced under § 2E1.4. This, argues Turechek, shows that § 2E1.4 is irrational and, therefore, unconstitutional.

Turechek argues that a central tenet of the Sentencing Guidelines is that those

with a prior criminal history will generally receive harsher sentences than those without a prior criminal history, and that § 2E1.4 is irrational because it is inconsistent with this principle. A person with no prior criminal history, he argues, is put in the same position as a career criminal contract killer, if both are convicted of 18 U.S.C. § 1958, and sentenced pursuant to § 2E1.4. Turechek's own experience, however, demonstrates otherwise; it is a reasonable assumption that, had he been a career criminal contract killer, Turechek would have received the ten-year statutory maximum term of imprisonment.

While Turechek raises an interesting argument, the Court notes the paucity of case law supporting either the proposition that such an anomaly renders the provision unconstitutional or the proposition that someone in Turechek's position, who was sentenced well below the ten-year statutory maximum, could challenge such a provision. While the Court doubts that such a quirk calls into doubt the rational basis underlying the Guidelines, it declines to address that issue because such a constitutional analysis is unnecessary to resolution of the instant case.

At Turechek's sentencing hearing, the district court found that his criminal history category was I and, after granting him a three-point reduction for acceptance of responsibility, that the applicable offense level was 29. The foregoing variables called for a range of imprisonment of between 87 and 108 months. The district court sentenced him to a term of imprisonment of 87 months.

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be

heard to challenge that statute on the ground that it may be applied unconstitutionally to others, in situations not before the Court." Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S. Ct. 2908, 2915 (1973); see also County Court v. Allen, 442 U.S. 140, 154-55, 99 S. Ct. 2213, 2223 (1979) (same).

While federal courts are obliged to decide constitutional questions when necessary to the resolution of a dispute before them, "they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration." Allen, 442 U.S. at 154, 99 S. Ct. at 2223. With this principle in mind, we will not address the potential merits of a hypothetical case in which the interplay between the Guidelines and a statutory maximum or minimum lead to a situation where a defendant's criminal history is rendered irrelevant.

Because Turechek was sentenced well below the ten-year statutory maximum term of imprisonment for a violation of 18 U.S.C. § 1958, he lacks standing to challenge the constitutionality of § 2E1.4. Due to his placement in criminal history category I, the Guidelines applicable to him were more lenient than if he had been placed in any higher category. Because it is clear that § 2E1.4 is not irrational as applied to Turechek, we find that he has no standing to make such a claim. Therefore, we decline to consider the merits of his argument and we affirm his sentence.

Finding no error, we affirm Turechek's sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.