IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2006

## STATE OF TENNESSEE v. TIMMY LEE HILL

**Appeal from the Circuit Court for Marshall County**
**No. 16347     Lee Russell, Judge**

_____

**No. M2005-01126-CCA-R3-CD - Filed May 17, 2006**

_____

A Marshall County Circuit Court jury found the defendant, Timmy Lee Hill, guilty of possession with intent to sell one-half gram or more of cocaine, a Class B felony, possession with intent to deliver one-half gram or more of cocaine, a Class B felony, and resisting arrest, a Class B misdemeanor.  The trial court merged the possession with intent to deliver conviction into the possession with intent to sell conviction and imposed an eighteen-year sentence for the possession conviction and a sixty-day sentence for the evading arrest conviction to be served consecutively as a Range II, multiple offender in confinement.  The defendant appeals, contending that the evidence was insufficient to support his conviction for possession with intent to sell one-half gram or more of cocaine.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Fannie J. Harris, Nashville, Tennessee, for the appellant, Timmy Lee Hill.

Paul G. Summers, Attorney General and Reporter; C. Daniel Lins, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's possession of 4.4 grams of crack cocaine on May 27, 2004.  Lewisburg Police Officer James Whitsett testified that on May 27, 2004, between 8:00 and 9:00 p.m., he was working with the Seventeenth Judicial District Drug Task Force in the First Avenue area.  He said that about ten to fifteen minutes after he began his surveillance of a drug house, he saw two people meet outside the house, including Charlie Cross, a known drug dealer.  He said that he saw the defendant approach Mr. Cross and that they interacted for ten to fifteen seconds.  He said that he could not see what Mr. Cross and the defendant were doing with their

hands because their backs were towards him but that they were standing within "reaching distance" of each other and were moving their arms. He said that the defendant then walked up First Avenue and that Mr. Cross went around the corner of the house. He said the defendant was flipping something in his hand, like he was counting money, drugs, or something else. He said that he was very familiar with the way street transactions occurred and that he radioed the other agents to tell them what he had seen.

On cross-examination, Officer Whitsett acknowledged that he had seen Mr. Cross and watched the house on previous occasions and that this was the first time he had seen the defendant there. He acknowledged he did not see the defendant and Mr. Cross exchange any money because of the way they were standing. He acknowledged he did not see the defendant or anyone else standing on the corner selling drugs that night.

Seventeenth Judicial District Drug Task Force Agent Shane George testified that on May 27, 2004, he and other members of the task force were in Lewisburg conducting drug investigations. He said he, Assistant Director Tim Miller, and Special Agent Bill Osterman were riding in an unmarked car but were wearing shirts which identified them as police officers. He said that they drove around the area while Officer Whitsett watched a known drug house but that they communicated with him by radio. He said Officer Whitsett radioed them and said he had seen a black male approach the house and engage in what he believed was a drug transaction. He said one and a half to two minutes passed from the time Officer Whitsett radioed to them and the time they saw the defendant. He said they watched the defendant and saw him holding something in his hands, like he was counting something.

Agent George testified that they drove to the shoulder of the road where the defendant was walking and parked the car. He said Agent Miller said to the defendant, "Hey. Step over here. I need to speak with you for just a moment." He said drug dealers did sell drugs on the street where they stopped. He said that the defendant took one and a half steps to the car and that he and Agent Osterman began to get out of the car. He said the defendant realized Agent Miller was a police officer and ran away "like he was trying out for a track and field." He said that he and Agent Osterman ran after the defendant while giving verbal commands to stop but that the defendant did not slow down. He said he could see the defendant the entire time he was chasing him. He said that when he was about three feet from the defendant, he saw the defendant reach into his right front pants pocket, pull out an object, and throw it to the side. He said that he could not see what the object was but that he did see the general area where the object hit the ground. He said the defendant ran only five to six feet beyond where he threw the item before he was taken down.

Agent George testified that he held the defendant until other officers got there and that the other officers attempted to place the defendant in handcuffs. He said the defendant resisted arrest by keeping his hands underneath him. He said that he took Assistant Director Miller to the area where the defendant threw the object and that they found a plastic bag containing twenty-four small bags of what he suspected to be crack cocaine. He said that the defendant had $92 when he was arrested and that they found the defendant's cell phone along the path where the defendant had run.

On cross-examination, Agent George acknowledged that he never saw the defendant try to sell drugs to anyone and did not see him try to pass the drugs to someone. He said he believed the defendant was going to sell the drugs because they were packaged in a way consistent with selling. He acknowledged that he did not find a scale on the defendant and that the small packages of cocaine could be found on a person after he buys them.

On re-direct examination, Agent George testified that a drug dealer selling drugs on the street usually did not have drug paraphernalia with him. He said 4.4 grams of crack cocaine is a substantial amount of cocaine for the area and is considered "dealer weight." He said that if a person were going to buy 4.4 grams of crack cocaine, the person would not want to have it in individual bags because he would only get 3.5 grams of crack cocaine and the rest of the weight would be plastic bags. He said that if a person had twenty-four "$20 bags" of cocaine in his possession, it would be indicative that the person was a drug dealer. He said that if a dealer bought 4.4 grams in one lump sum for $200 and broke the cocaine into twenty-four "$20 bags," then the dealer could make a $280 profit. On re-cross examination, Agent George stated an "8-ball" is approximately 3.5 grams of cocaine and is a substantial amount.

Seventeenth Judicial District Drug Task Force Assistant Director Timothy Miller testified that on May 27, 2004, he participated in the investigation leading to the defendant's arrest. He said that he asked the defendant to approach the car and that the defendant took two or three steps toward him. He said the defendant ran after seeing he was a police officer. He said the other officers began yelling commands for the defendant to stop and identified themselves as police officers. He said that once the defendant was caught, the officers struggled to get the defendant handcuffed. He said that Agent George told him he had seen the defendant throw something out of his pocket and that they looked around the area. He said he found a plastic bag with numerous small pieces of what appeared to be crack cocaine. He said the plastic bag contained twenty-four smaller bags of cocaine and were packaged for resale. He said that in the last five years, he had made hundreds, maybe even a thousand, drug arrests and had never arrested a user with twenty-four "$20 bags" in his pocket. He said he had arrested drug dealers with multiple packages of "$20 bags."

On cross-examination, Assistant Director Miller testified that he knew Mr. Cross to be a user and seller. He acknowledged he wrote in the complaint for this case that Mr. Cross was a drug dealer, not a drug user.

Seventeenth Judicial District Drug Task Force Director Tim Lane testified that he was the vault and evidence custodian for the task force. He testified to the chain of custody of the cocaine entered as an exhibit. He said a rock of cocaine weighing 4.4 grams would be worth $225 on the street and could be broken down for resale. He said that 4.4 grams was a large amount of cocaine for the Seventeenth Judicial District and that most drug addicts attempted to purchase a "$10 or $20 rock." He said the crack cocaine in this case could have sold for $480.

On cross-examination, Director Lane stated that a person could get approximately forty-four "smokes" out of 4.4 grams of cocaine. He acknowledged a "$10 smoke" would be used up quickly. He said a "$10 smoke" would give the user a high for about thirty minutes.

Tennessee Bureau of Investigation Agent Glenn Everett testified that he was a chemist in the crime laboratory and that he had examined the substances contained in the twenty-four individual bags entered as an exhibit. He said he tested the substances in the bags and found the substances in each of the twenty-four bags to be cocaine. He said the total weight of the cocaine was 4.45 grams. He said the average amount of cocaine in each bag was .18 grams.

Arlene Jones, the defendant's mother, testified that the defendant had admitted he used drugs and would not listen to her. On cross-examination, Ms. Jones acknowledged that the defendant did not have a job or any income in May 2004, but stated that she would give him a couple of dollars. She said she did not know where the defendant got the $92 he had when he was arrested, unless he got it from his wife. She said the defendant did not sell drugs.

Sherleen Harris, the defendant's sister, testified that she had seen her brother use cocaine and that she had two other brothers who also used cocaine. She said that she would give the defendant $20 when he asked for money and that one time the defendant took $20 out of her purse. On cross-examination, Ms. Harris acknowledged that the defendant did not work and that she would be shocked to learn her brother had $480 "worth of stuff." She said that as much as he asked her for money, she did not think he had $480. She acknowledged she would be very surprised if the defendant had $92 because he did not have a job. She said the defendant's wife always took care of him and gave him whatever he wanted.

Charles Hill, the defendant's brother, testified that he was living in the Marshall County Jail because he violated his probation for possession of drug paraphernalia and public drunkenness. He said he was arrested for having drug paraphernalia the same night the defendant was arrested. He said that on May 27, 2004, he had been with the defendant and "Ty" Baugh smoking crack cocaine. He said they smoked "quite a bit" of cocaine at a house on First Street. He said that he had never seen the defendant selling drugs but that the defendant used drugs.

On cross-examination, Mr. Hill stated that on May 27, 2004, he was smoking crack cocaine from about 4:00 p.m. until around 11:00 p.m. or midnight. He said he did not know how many times he smoked that day. He said he went to the crack house many times without money. He said there were between twelve to fourteen people at the house smoking crack cocaine. He acknowledged that he was unemployed and that his brother did not have a job. He acknowledged the cocaine in the twenty-four small bags was a lot of cocaine and that he had bought cocaine in similar bags, one at a time. He acknowledged that the defendant was giving him small bags of cocaine and that the defendant "delivered" it to him. He also acknowledged he did not give the defendant money for the cocaine.

On re-direct examination, Mr. Hill testified that the most small bags of cocaine he ever used at one time were between thirty and forty bags. He said the most money he spent on the small bags of cocaine at one time was between $300 and $400.

Marcus Tyrone Baugh, the defendant's friend, testified that he was currently incarcerated in the Marshall County Jail for a possession of crack cocaine conviction. He said he was a cocaine addict. He said that on May 27, 2004, he, the defendant, and Mr. Hill smoked a large amount of crack cocaine.

On cross-examination, Mr. Baugh stated that the defendant told him he was going to buy an "8-ball" from Mr. Cross. He acknowledged that the defendant had provided the crack cocaine they were smoking but that they all paid for it. He said that he brought $40 with him for crack cocaine, that Mr. Hill paid some money, that the defendant paid more than $40, and that they smoked over $100 of "dope" that day. He then admitted that they spent around $400 on crack cocaine that day, including what the defendant had purchased from Mr. Cross.

The defendant testified that he had been convicted of felony forgery, theft, and aggravated assault. He said that on May 27, 2004, he had been in the First Avenue area. He said that he knew his brother would be there and that he did not have any money. He said he smoked with his brother and Mr. Baugh the cocaine they had, but they ran out of money. He said he went home because his wife had called, and he took $150 dollars from his wife's jewelry box. He said he also had $100 from doing "odds-and-end work." He said he went to a house on First Avenue and sat on the porch waiting to "score." He said he met Mr. Cross and asked Mr. Cross how much money he wanted for all the cocaine he had. He said that he told Mr. Cross he would give him $160 for it and that Mr. Cross agreed to sell it for $160. He said he had used cocaine since 1985 and had never sold drugs. He said he wanted to buy a large amount of drugs in order that he would not have to go out the rest of the night. He said he was going home to check on his family and then was supposed to meet his brother at another house. He said he was going to smoke the cocaine and was not going to sell it.

On cross-examination, the defendant acknowledged the twenty-four small bags of crack cocaine was the cocaine he bought from Mr. Cross. He acknowledged he had possession of the crack cocaine. He denied approaching the car with the drug task force agents in it. He said the officers called him to the car and when he realized they were police officers, he ran. He then acknowledged he took one or two steps towards the car. He denied struggling with the police officers when they tried to handcuff him. He said that he, his brother, and Mr. Baugh "pitched in" for the cocaine and that they were to meet at his brother's friend's house. He said that he had $100 from "odds-and-end work" and $150 from his wife's jewelry box and that he paid $160 to Mr. Cross for the cocaine. He acknowledged he had $92 when he was arrested but could not explain where the money his brother and Mr. Baugh "pitched in" had gone.

We first note that the defendant's notice of appeal states that the docket number of the case being appealed is 16347, which relates to the cocaine possession and resisting arrest convictions. However, the issue presented for review involves only the sufficiency of the evidence of the cocaine

possession convictions. The issue does not relate to the defendant's conviction for resisting arrest. Therefore, we affirm the judgment for resisting arrest.

The defendant contends that the evidence was insufficient to prove the elements of intent to deliver or sell cocaine. The defendant asserts he did not intend to deliver or sell the cocaine but obtained it for personal use. The defendant asserts that by interpreting Tennessee Code Annotated section 39-17-419 to allow an inference of intent to sell or deliver based on the amount of cocaine possessed without any other circumstances relevant to the defendant's mental state, the state's burden of proving the intent element is eliminated. The defendant asserts the defendant did not have a "cutting agent," the defendant did not have a large amount of cash, and there was not a large amount of cocaine involved. The defendant asserts he presented four witnesses who testified he was a drug addict. The defendant asserts testimonial evidence from police officers that 4.4 grams of crack cocaine had a possible value of $225 to $400 is insufficient to prove intent beyond a reasonable doubt.

The state asserts the evidence at the trial was sufficient to support the defendant's convictions for possession with intent to sell and possession with intent to deliver one-half gram or more of cocaine. The state asserts the defendant admitted he possessed the cocaine. The state also asserts the defendant's intent to deliver the cocaine may be inferred from the amount of cocaine he possessed, along with the other relevant facts. The state asserts the other relevant facts supporting the inference that the defendant possessed crack cocaine with the intent to sell and deliver include: (1) the cocaine was individually packaged and not a lump sum, (2) the defendant did not possess any drug paraphernalia used to consume crack cocaine, (3) the defendant was arrested in a neighborhood known for high drug traffic, and (4) the defendant had $92 in his possession at the time of his arrest. The state contends the evidence established the defendant intended to deliver the cocaine he possessed to his brother and Mr. Baugh.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

It is a criminal offense for a person knowingly to "[p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." See T.C.A. § 39-17-417(a)(4). The one element present in almost all criminal offenses which is most often proven by circumstantial evidence is that relating to the culpable mental state. See Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973). Other than an accused stating his or her purpose, intent, or thinking at the relevant times, the trier of fact is left to determine the mental state by making inferences drawn from the surrounding circumstances found by it to exist. See, e.g., Poag v. State, 567 S.W.2d 775, 778 (Tenn. Crim. App.

1978).  Tennessee Code Annotated section 39-17-419 states in part, "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."  With respect to this inference, our review is only to consider whether "under the facts of the case, there is no rational way the trier [of fact] could make the connection permitted by the inference" beyond a reasonable doubt.  County Court of Ulster County v. Allen, 442 U.S. 140, 157, 99 S. Ct. 2213, 2225 (1979).  In other words, even though circumstantial evidence is needed for one element, the standard for evidence sufficiency remains the same.

In interpreting Tennessee Code Annotated section 39-17-419, this court has concluded that the plain and ordinary language of the statute "permits the jury to draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered together."  State v. John Fitzgerald Belew, W2004-01456-CCA-R3-CD, Henderson County, slip op. at 6 (Tenn. Crim. App. Apr. 18, 2005).  Many facts and circumstances exist from which a jury may properly draw an inference that an accused intended to sell or deliver controlled substances.  See State v. Brown, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (manner of packaging of drugs and absence of drug paraphernalia may support inference of possession with intent to sell, rather than possession for personal use); State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding it proper for a jury to consider "the amount and value of a controlled substance . . . to infer an intention to distribute").  This court has also held that it is not improper for an officer to testify as to the different traits of drug users and dealers.  See State v. William Aubrey Trotter, No. 01C01-9701-CR-00019, Davidson County, slip op. 7-8 (Tenn. Crim. App. Feb. 24, 1998).

We do not necessarily reject out of hand the defendant's contention that, standing alone, the defendant's possession of 4.4 grams of cocaine is insufficient to support an inference of an intent to sell and deliver.  See, e.g., Turner v. United States, 396 U.S. 398, 423, 90 S. Ct. 642, 656 (1970) (stating that mere possession of 14.68 grams of a mixture containing cocaine and sugar is "consistent with . . . possessing the cocaine not for sale but exclusively for his personal use").  However, in the light most favorable to the state, the evidence shows that: (1) the cocaine was packaged in twenty-four individual "$20 bags," (2) Agent George testified drugs packaged in "$20 bags" were consistent with reselling, (3) Agent George also testified 4.4 grams of crack cocaine was a substantial amount of cocaine and was considered "dealer weight," (4) Assistant Director Miller testified he had arrested dealers, not users, who had multiple packages of "$20 bags," (5) Director Lane testified 4.4 grams was a large amount of cocaine for the Seventeenth Judicial District, and  most addicts would attempt to buy a "$10 or $20 rock," (6) the defendant had $92 when he was arrested, (7) the defendant's sister testified she would be "very surprised" if the defendant had $92 because he was unemployed, (8) the total value of the crack cocaine in this case was $480, and (9) the defendant had no drug paraphernalia of the type used for the consumption of crack cocaine on his person.

We believe the evidence is sufficient to warrant the jury's rejection of the defendant's claim that he possessed the cocaine for his own personal use.  The jury chose to believe the testimony of

the state's witnesses over that of the defendant, which is its prerogative. <u>See</u> <u>State v. Pappas</u>, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). We conclude that the evidence was sufficient for a rational juror to find beyond a reasonable doubt that the defendant possessed the cocaine with the intent to sell and deliver it.

## CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE