# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 15, 2007

## STATE OF TENNESSEE v. ARTHUR PIRTLE

### Appeal from the Circuit Court for Marshall County
### No. 16652    Robert Crigler, Judge

---

### No. M2006-02283-CCA-R3-CD - Filed June 27, 2007

---

In May 2005, the defendant, Arthur Pirtle, was indicted by a Marshall County grand jury on one count of possession of more than .5 gram of a Schedule II Controlled Substance (cocaine), a Class B felony, and one count of Simple Possession, a Class A misdemeanor.  In June 2006, a jury trial was held in Marshall County Circuit Court.  At the conclusion of the trial, the defendant was convicted of possession of a Schedule II controlled substance but acquitted on the simple possession charge.  At the sentencing hearing, the trial court sentenced the defendant to twenty-seven years in prison as a Range III, persistent offender.  On appeal, the defendant contends that the evidence was insufficient to support his conviction. After reviewing the record, we conclude that the evidence was sufficient to find the defendant guilty beyond a reasonable doubt and therefore affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER JJ., joined.

Donna Orr Hargrove, District Public Defender; Andrew Jackson Dearing III, Assistant District Public Defender, for the appellant, Arthur Pirtle.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Chuck Crawford (on appeal) and W. Michael McCown (at trial), District Attorneys General; Weakley E. Barnard and Brooke Grubb, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

At trial, Detective Dac Burrow of the Lewisburg Police Department testified that on March 5, 2004, he was assisting the Seventeenth Judicial District Drug Task Force in the execution of a search warrant.  Prior to the execution of the warrant, he and several other Task Force members had conducted surveillance at the residence, located at 834 Tankersley Street in Lewisburg, Marshall

County. Detective Burrow testified that he witnessed several persons going in and out of the residence, with many of these persons staying less than five minutes. Detective Burrow testified that several of the persons visiting the house were known drug users. In most instances, the front door of the residence was left open, and the persons would go in without knocking.

On the evening of March 5, Detective Burrow and Drug Task Force Agent Shane George entered the residence and found several individuals in the kitchen: Jikinte Morris,[1] David Burden, and the defendant, Arthur Pirtle. Detective Burrow testified that when he and Agent George searched the defendant, they found $616.00 in his front pocket and a bag containing 1.8 grams of crack cocaine in his shoe. The agents who searched the residence also found marijuana and crack cocaine hidden behind the water heater in the residence's utility room. This testimony was corroborated by the testimony of Agent George.

Deputy Bart Fagan with the Marshall County Sheriff's Department testified that he assisted with the surveillance and execution of the search warrant at the Tankersley Avenue residence. Deputy Fagan testified that during his surveillance of the home, he observed several people coming and going from the residence, with most of the visitors staying only a few minutes at a time.

Drug Enforcement Agency (DEA) Agent James Whitsett, who was employed as a detective with the Lewisburg Police Department the day the search warrant was executed, testified that in the weeks leading to the defendant's arrest, he had personally performed "well over 100" hours of surveillance on the Tankersley Street residence. Based on rental records, the Drug Task Force knew that the defendant was leasing the residence. During his surveillance, he witnessed several known drug users exchanging what appeared to be crack cocaine for money in front of the house. He also witnessed the defendant meet several visitors to the house and lead them inside, with the visitors emerging from the house a short time later. Detective Whitsett testified that after the defendant was arrested, he and Drug Task Force Agent Tim Miller advised the defendant of his rights. The defendant then voluntarily stated that he wished to talk to the officers. The defendant told the officers that Morris supplied him with three "eight balls" (each eight ball weighing approximately 3.5 grams) of cocaine each week, and that the defendant used the proceeds of the drug sales to repay Morris for the drugs. The defendant told the officers that he purchased $200.00 worth of cocaine (roughly 3.5 grams) on March 4, and that the cocaine found in his shoe was the remainder of that purchase, which he had not yet sold. Agent Miller's testimony regarding the defendant's arrest and statements to police corroborated the testimony offered by Detective Whitsett.

The defendant testified that on the night of his arrest, he was living in the Tankersley Road residence along with two other individuals, Burden and Yolanda Cross. He claimed that at the time of his arrest, he did not know that there were any drugs in the house; he claimed that the first time he saw drugs in the house was the night of the arrest, when Burden put some cocaine on a table when the police arrived. According to the defendant, he placed this bag of crack cocaine in his shoe to

_____

[1]This transaction is unrelated to an appeal filed by Mr. Morris and recently considered by this court. See State v. Jikinte Lashane Morris, No. M2005-02909-CCA-R3-CD, 2007 WL 609203 (Tenn. Crim. App. Feb. 26, 2007).

keep the police from finding it. The defendant testified that he told the police that he had purchased $200.00 worth of cocaine the day before he was arrested, but that he intended to use the drugs himself, not sell them. On cross-examination, he also denied telling the police that he had ever sold drugs for Jikinte Morris. Finally, the defendant testified that the $616.00 the police found in his pocket was comprised of $300.00 he had earned from his job at Tow Joe's Lumber Company, $300.00 that Burden and Cross had given him for rent and household expenses, and $16.00 of his own money.

ANALYSIS

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In Tennessee, it is a criminal offense for a person knowingly to "[p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." See Tenn. Code Ann. § 39-17-417(a)(4) (2003). The one element present in almost all criminal offenses which is most often proven by circumstantial evidence is that relating to the culpable mental state. See Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973). Other than an accused stating his or her purpose, intent, or thinking at the relevant times, the trier of fact is left to determine the mental state by making inferences drawn from the surrounding circumstances found by it to exist. See, e.g., Poag v. State, 567 S.W.2d 775, 778 (Tenn. Crim. App. 1978). Tennessee Code Annotated section 39-17-419 states in part, "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." With respect to this inference, our review is only to consider whether "under the facts of the case, there is no rational way the trier [of fact] could make the connection permitted by the inference" beyond a reasonable doubt. County Ct. of Ulster County v. Allen, 442 U.S. 140, 157, 99 S. Ct. 2213, 2225 (1979). In other words, even though circumstantial evidence is needed for one element, the standard for evidence sufficiency remains the same.

In interpreting Tennessee Code Annotated section 39-17-419, this court has concluded that the plain and ordinary language of the statute "permits the jury to draw an inference of intent to sell

or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered *together*." State v. John Fitzgerald Belew, No. W2004-01456-CCA-R3-CD, 2005 WL 885106, at *5 (Tenn. Crim. App. Apr. 18, 2005) (emphasis in original). Many facts and circumstances exist from which a jury may properly draw an inference that an accused intended to sell or deliver controlled substances. See State v. Brown, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (manner of packaging of drugs and absence of drug paraphernalia may support inference of possession with intent to sell, rather than possession for personal use); State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding it proper for a jury to consider "the amount and value of a controlled substance . . . to infer an intention to distribute"). This court has also held that it is not improper for an officer to testify as to the different traits of drug users and dealers. See State v. William Aubrey Trotter, No. 01C01-9701-CR-00019, 1998 WL 75423, at *3-*4 (Tenn. Crim. App. Feb. 24, 1998).

We do not necessarily reject out of hand the defendant's contention that, standing alone, the defendant's possession of 1.8 grams of cocaine, found in a bag inside the defendant's shoe, is insufficient to support an inference of an intent to sell and deliver. See, e.g., Turner v. United States, 396 U.S. 398, 423, 90 S.Ct. 642, 656, (1970) (stating that mere possession of 14.68 grams of a mixture containing cocaine and sugar is "consistent with . . . possessing the cocaine not for sale but exclusively for his personal use"). However, in the light most favorable to the state, the other relevant facts surrounding the defendant's arrest support the jury's verdict. In addition to the bag of cocaine, the defendant had over $600 on his person at the time of his arrest. The defendant also admitted to law enforcement that he had already sold roughly half of the cocaine that he had purchased the day before his arrest, and that the cocaine in his shoe represented the remainder of his original purchase. Agents also found cocaine and marijuana hidden behind a water heater in a utility closet in a house rented by the defendant. Additionally, Detective Whitsett testified that he personally witnessed the exchange of what appeared to be crack cocaine for money outside the residence during the month-long surveillance of the residence. Several other officers involved in the case testified about the extremely high number of people, including known drug dealers, making brief visits to the defendant's residence, with Detective Whitsett testifying that the defendant met several of these visitors at the door. The jury chose to believe the testimony of the state's witnesses over the defendant's testimony that he did not sell drugs and that the cocaine in his possession was not his. Such is the jury's prerogative. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Therefore, we conclude that the evidence was sufficient for a rational jury to find beyond a reasonable doubt that the defendant possessed the cocaine with the intent to sell and deliver it.

CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE